# Rheem *versus* The Naugatuck Wheel Company.

In a suit by a corporation, under the plea of the general issue, the plaintiffs are not required to exhibit or prove their act of incorporation. The want of it must be pleaded in abatement, or specially in bar.

A party who recommends another as worthy of credit, is liable for damages, if he wilfully suppress an important fact, within his knowledge, affecting the responsibility of the person recommended; otherwise, if such omission be inadvertently made, without the intention to deceive the plaintiffs.

In an action for deceit in falsely recommending a third person as worthy of credit; it is sufficient to render the defendant liable, that he wilfully suppressed a fact within his knowledge, affecting such party's responsibility, even though such suppression of the truth were made solely to benefit the person recommended.

It is no defence to such action, that the article procured on such recommendation was a machine which was a violation of a patented one; the machine having been retained by the parties, without any offer to return it to the plaintiffs.

ERROR to the Common Pleas of *Cumberland county.*

This was an action on the case by The Naugatuck Wheel Company, a corporation chartered by the state of Connecticut, against Jacob Rheem, for deceit, in wilfully and fraudulently recommending to the plaintiff one David Klinefelter, as a person in good credit, whereby they were induced to sell him a spoke-machine of the value of $600. The plea was not guilty.

On the trial of the cause, the plaintiffs offered to give in evidence their original agreement of association, the record of the certificate filed with the town clerk, and also with the secretary of state of Connecticut, and the fact of publication required by

[Rheem v. The Naugatuck Wheel Company.]

the statute of that state; in order to show that they were duly incorporated. To this offer the defendant objected, that the proceedings were not in conformity to the statute; but the court admitted the evidence, and sealed a bill of exceptions.

The plaintiffs then offered in evidence the following correspondence:—

"Mount Rock, November 15, 1856.

"Sirs: I received yours stating that you have no acquaintance with me, and don't know about my ability to pay for the machine in case I buy it. If I understand your first letter, I am to pay the freight and my portion of the agent's expenses—this, of course, right down—and after having run the machine three months, to pay fifty cents on the hundred; and if the machine will do the work, I am to pay the one-half, and reduce it to thirty-five cents per hundred, for three months more, then to pay the balance. I have already been making arrangements. I had a forty-foot belt made in Baltimore, seven inches wide, to run to third floor of my mill, and other shafting, and a large lot of stuff on hand. In my immediate neighbourhood there is any amount of hickory. Eberly & Miley don't want to see me get a machine. They calculate to get their hickory out of my neighbourhood. They told me that your agent had promised not to sell one to any one else in this section. What I have said above, I will do.

"DAVID KLINEFELTER."

"P. S.—Please send the machine, so that it can be put up at the same time as the other machine, to save expenses. You will find Mr. Rheem's reference on the other side of this."

"I am acquainted with Mr. Klinefelter, and have had, and still have considerable dealings with him, and find him industrious and honest. I have endorsed for him to the amount of $800, and would do so again, whenever he wants. I would trust him any amount—a machine, or anything else, the amount of $500 or $600. This I would, and would have no fear as to the pay. You can do as you please, as I do believe he will pay anything he contracts for. "Yours, respectfully,

JACOB RHEEM."

"Carlisle, Pa., Nov. 15, 1856.

"Naugatuck, November 19, 1856.

"Mr. Klinefelter: Yours of the 15th and 17th insts. are both received. From their contents, we are inclined to think you are all right as to ability to pay. We have a set of machines ready to send, and we know they will suit you when you try them, but we would rather you would come and see ours operate; it would be an advantage to you and us too. The expense of coming would not exceed $20. The fare from Philadelphia here is less than $5. By leaving your place in the morning, you can arrive

here at noon on the next day; leave here in the morning, you get home the next day: so that three days' time, or four at most, is all you lose. If we can't make a trade with you when you see the machines work, we will pay one-half of your expenses in coming. Provided you can't come, if you will get the principal of the Carlisle Seminary to certify that the gentleman to whom you refer is responsible (viz. Mr. Rheem), we will forward the machines forthwith. If you do come, it will be well to get such certificate. You may think we are too nice and particular in the matter, but we have had some experience in selling to strangers, and have already lost considerable in that way, and we are, therefore, getting rather more careful. All we ask, is to be satisfied we are safe. We know we have the best machine ever invented for getting out spokes, and if you see it work, you will have one. Try to come on. Let us hear from you right off. If you come, write when, and I will be at home.

"Yours, truly,

"NELSON TULLER, *President.*"

"As far as my acquaintance with Mr. Rheem extends, he is a responsible person.        CHAS. CLARK."

"Mr. Clark forgot to state, that I am a stockholder in the erection of his academy, to a considerable extent. The cars just off, or I would say more.        J. RHEEM."

"Mount Rock, Cumberland Co., Pa., Sept. 10, 1856.

"Sirs: I received your one yesterday, and would say to you, that I wish you to send a machine at the same time you send one to Mechanicsburg. It will save some expenses. I will accept with the contract they have, as I think the proposition a fair one.

"DAVID KLINEFELTER."

To this offer the defendant objected, but the court below admitted the evidence, and the defendant excepted.

The plaintiffs then proved the sale of a spoke-machine to Klinefelter, for $600; for which they took his two promissory notes, of $300 each, payable in three and six months. That the notes endorsed by Rheem for Klinefelter were given for the purchase, from James Dunlap, of one half of a steam saw-mill, which had been erected by Dunlap and Klinefelter. That to secure these endorsements, Rheem took the conveyance of the one-half of the mill to himself; and at the same time, took from Klinefelter a bond and warrant of attorney to confess judgment in the sum of $1000, with a stay of execution for three months. That on the same day, Klinefelter, and Rheem, as his surety, executed a bond to James Dunlap, in $700, conditioned that they would pay the debts of the late firm, and indemnify and save harmless the said James Dunlap, &c. And that on the 20th May 1857, Rheem issued a

*fieri facias* on his judgment for $1000, under which the sheriff levied on all the property of Klinefelter, including the spoke-machine, all which was purchased by the defendant.

In the course of the trial, the court admitted evidence on the part of the defendant, tending to prove that the machine sold to Klinefelter was a violation of the Blanchard patent; but subsequently instructed the jury to disregard this evidence as irrelevant to the issue trying.

The court below (GRAHAM, P. J.) delivered the following charge to the jury :—" This is an action brought by the plaintiffs against Jacob Rheem to recover damages for a fraud, which they allege was practised upon them under the following circumstances. A man named David Klinefelter was conducting the business of a steam saw-mill near Mount Rock, in this county.   He had leased a lot of about an acre from the Messrs. Trego, on which he had erected his steam saw-mill; and while engaged in carrying on his business, applied to the plaintiffs to purchase from them a machine for making carriage spokes, to be used at his mill.   Before the purchase was made, Klinefelter wrote to plaintiffs, requesting them to forward the machine, and in reference to his ability to pay, forwarded to them a letter from Jacob Rheem, dated 15th of November, 1856.   This letter of Mr. Rheem's is the subject of complaint, and the plaintiffs allege was a fraud practised upon them, by which they were induced to give credit to Klinefelter, who was unable to pay, and they thus lost the value of the property sold to him.

" The gist of this action is fraud and deceit.   To sustain it, there must be fraud accompanied with damage ; and where both fraud and damage to the person on whom it was practised is shown, the action of deceit may be sustained.   A naked lie will not sustain a suit of this nature ; for a person may honestly make a statement upon incorrect information, which he believes to be true, although it may in fact be untrue.   But if such falsehood is uttered with a knowledge of its falsity, *mali animo*—with an evil mind, a dishonest purpose, this is a deceit for which the party will be held responsible, so far as it may occasion damage or loss to the party to whom it is made.

" The letter upon which the plaintiffs allege they gave Klinefelter credit, is as follows :" (The court here read the letter to the jury.) " As to the assertion that Rheem had considerable dealings with Klinefelter, and found him industrious and honest, it appears to be fully sustained by the evidence ; for dealings between these parties, both before and after this transaction, are shown ; and witnesses have been called to show that Klinefelter was a man of remarkable industry, and that his honesty was not suspected.

" Mr. Rheem further states, that he had endorsed for Klinefelter to the amount of $800, and would do so again whenever he wanted, and would trust him to the amount of $500 or $600.

[Rheem *v.* The Naugatuck Wheel Company.]

The plaintiffs complain that in this there was a suppression of the truth, for the purpose of obtaining the credit for Klinefelter; that at the time he endorsed Klinefelter's paper for $800, he had a conveyance of one-half his property, and a judgment of $1000, as security for his endorsement, and that these facts were not stated in his letter.   If these facts were withheld through improper motives, and to obtain a credit for an individual he did not consider worthy of such credit, this would be practising a deceit for which defendant would be responsible.   On the contrary, if the fact of the security he held for his endorsement was not withheld through dishonest or impure motives, and if he honestly believed at the time he wrote to plaintiffs that Klinefelter was worthy of credit, and would have given him credit as he there states, then there is no such fraud or deceit as would subject him to damages.   Did Jacob Rheem in this transaction act the part of an honest, moral man? if he did, the law will not punish him; if he did not, but acted dishonestly and immorally, and thus practised a deceit upon plaintiffs, he is responsible to plaintiffs for the deceit thus practised."

The defendant's counsel requested the court to instruct the jury as follows:—

1. If the jury believe that, on the 15th of November 1856, when Jacob Rheem made the recommendation in writing of David Klinefelter to the plaintiffs, he then had endorsed the three or four notes to the amount of $800, or more, given to James Dunlap, and withheld and suppressed the fact that, to induce him to make these endorsements, he had taken a conveyance of one-half of Klinefelter's property, and had taken a judgment from him for $1000, upon which he could issue execution within three months, this was a suppression of the truth, and amounted to a falsehood, and if it induced the plaintiffs to trust Klinefelter and they thereby lost their money—the defendant is liable to the consequences of such loss in this action.

Answer.—" The facts recited in this point would be a suppression of the truth, and equivalent to a falsehood.   But if this suppression of the truth was inadvertently made, and not with intention to deceive the plaintiffs, such omission to state the whole truth would not necessarily make Rheem liable in this case; but if such omission was deceitfully made to procure a credit Rheem did not honestly consider Klinefelter worthy of, then he would be responsible."

2. If the jury believe that Jacob Rheem wrote the recommendation of David Klinefelter of the 15th of November 1856, and at the time he held a conveyance of the one-half of all Klinefelter's property, and held a judgment against Klinefelter for $1000, all of which he had taken as an indemnity for endorsing the notes for him mentioned in that communication of the 15th of November 1856, and he withheld and suppressed the fact that he had taken

[Rheem *v.* The Naugatuck Wheel Company.]

such securities for his endorsement, he thereby asserted a falsehood,—and if his assertion, as made, induced the plaintiffs to part with their property, which they have thereby lost, although he may have had *alone* as his intention *to benefit the said David Klinefelter*, he is liable in damages to the plaintiffs to indemnify them for their loss.

Answer.—"We have said that the suppression of the truth may be equivalent to the assertion of a falsehood, and if suppressed with intent to deceive and perpetrate a fraud, it would make Rheem responsible, even if his only design was to benefit Klinefelter. But if the letter was honestly written, and Rheem really believed all that he stated was true, and that Klinefelter was worthy of the credit he asked, and would have given him credit to that amount himself—then he is not guilty of such fraud and deceit as would render him responsible in damages."

To this charge the defendant excepted; and a verdict and judgment having been rendered for the plaintiffs for $627.50, he removed the cause to this court, and here assigned for error: 1. The admission in evidence of the proof given of plaintiffs' incorporation.   2. The admission in evidence of the correspondence mentioned in the bill of exceptions.   3. The answers to the points presented on the trial.   4. The withdrawal from the jury of the evidence in reference to the Blanchard patent.

*Williamson,* for the plaintiff in error.—There was no competent evidence that the plaintiffs are a corporation: *Ang. & Ames on Corp.* 338; 2 *Cow.* 778; 8 *Johns.* 378; 19 *Id.* 300, 302-3. The letter in evidence was not directed to the plaintiffs, and gave them no cause of action: Lawrason *v.* Mason, 3 *Cranch* 496; Walsh *v.* Bailie, 10 *Johns.* 180-2-3; Myers *v.* Edge, 7 *T. R.* 254; Robbins *v.* Bingham, 4 *Johns.* 476.   Rheem was not bound to disclose his independent transactions with Klinefelter; if he believed what he wrote to be true, there was no liability incurred: Tryon *v.* Whitmarsh, 1 *Met.* 1-9; Gainsford *v.* Blackford, 6 *Price* 35; 7 *Id.* 544. If the plaintiffs' machine was a violation of the Blanchard patent, they could maintain no action in respect to the sale of it: Act of Congress of 1836, § 14, 5 *Stat. at Large* 123; Maybin *v.* Coulon, 4 *Dall.* 298; s. c. 4 *Yeates* 24; Biddis *v.* James, 6 *Binn.* 321; Seidenbender *v.* Charles, 4 *S. & R.* 159; Toler *v.* Armstrong, 4 *W. C. C.* 299; Southern *v.* Howe, 2 *Rol.* 526.

The opinion of the court was delivered by

READ, J.—The misnomer of a corporation plaintiff can only be taken advantage of by a plea in abatement: Gray *v.* Monongahela Navigation Company, 2 *W. & S.* 162; Fritz *v.* The Commissioners, 5 *Harris* 135.   The want of an act of incorporation

[Rheem *v.* The Naugatuck Wheel Company.]

must be pleaded in abatement, or in bar specially : Zion Church *v.* The St. Peter's Church, 5 *W. & S.* 215. This is the proper rule, and is the settled practice of the Supreme Court of the United States; Conard *v.* Atlantic Insurance Company, 1 *Peters* 450; Society for Preaching the Gospel *v.* Town of Pawlet, 4 *Peters* 480 ; who have also decided, that the question of the citizenship of the plaintiff can only be raised by a plea to the jurisdiction : Sheppard *v.* Graves, 14 *Howard* 505, 512. This disposes of the first error assigned, as the plaintiffs were not required, under the pleadings, to exhibit or prove their act of incorporation, or charter under the laws of Connecticut.

The second and third errors may be considered together, consisting of the objections to the admission of testimony to prove the deceit, and of the answers of the court to the points of the plaintiffs in relation to this evidence.

The evidence offered and admitted, consisted of a letter of David Klinefelter, dated Mount Rock, November 15, 1856, upon the subject of his desiring to purchase a machine, and replying to a letter on the same subject, in which the writer said he had no acquaintance with him, and that he had no knowledge about his ability to pay for it. The postscript was in these words : " P. S.— Please send the machine, so that it can be put up at the same time as the other machine, to save expenses. You will find Mr. Rheem's reference on the other side of this"—which is as follows :— " I am acquainted with Mr. Klinefelter, and have had, and still have considerable dealings with him, and find him industrious and honest. I have endorsed for him to the amount of $800, and would do so again whenever he wants. I would trust him any amount—a machine or anything else, the amount of $500 or $600. This I would, and have no fear as to the pay. You can do as you please, as I do believe he will pay anything he contracts for."

Also, of a letter to Klinefelter, from the president of the company, dated Naugatuck, November 19, 1856, acknowledging the receipt of the above letter of the 15th, and also another of the 17th, and requesting him to come on and see their machines operate. "From their contents," says the president, "we are inclined to think you are all right as to ability to pay." "Provided you can't come, if you will get the principal of the Carlisle Seminary to certify that the gentleman to whom you refer is responsible (viz. Mr. Rheem), we will forward the machines forthwith." Upon this was an endorsement by the principal of the seminary : "As far as my acquaintance with Mr. Rheem extends, he is a responsible person. CHAS. CLARK." And then by Mr. Rheem :—" Mr. Clark forgot to state that I am a stockholder in the erection of his academy to a considerable extent. The cars just off, or I would say more. J. RHEEM."

These letters were to be followed, and were followed with evi-

dences that a machine was forwarded on the 29th November 1856, and that David Klinefelter gave his notes for it.

This evidence was entirely pertinent, and was properly admitted, for it proved the origin of the transaction, the inquiries of the plaintiffs about the ability of Klinefelter to pay, and the assertion by Rheem of his responsibility, and that Klinefelter would pay anything he contracted for. In these days of cheap postage, the address is often not on the letter, but on the envelope; but there can be no doubt that the letter of the 15th November, backed by Rheem, was addressed to the president of the company, whose letter of the 19th, in reply, and asking for a certificate of the principal of the Carlisle Seminary, that Mr. Rheem, to whom Klinefelter refers, is responsible, contains on it, not only Mr. Clark's certificate, but another, backed by Rheem, to show that he is what Mr. Clark represents him to be. This letter, with the endorsements, was, no doubt, returned to the president as the answer to his inquiry.

It is, therefore, clear that Klinefelter bought with a full knowledge of what he was purchasing—and the sale was made to him on the faith of Rheem's assertion of his ability to pay. If these representations were true, and if they disclosed all the material facts, then Rheem incurred no liability of any kind; but if he, knowingly falsified, or wilfully suppressed the truth, with a view of giving Klinefelter a credit to which he was not entitled, then he was responsible to the plaintiffs for the damage sustained by them in consequence of his false representations.

The evidence showed a clear suppression of material facts by Rheem, such as that when he endorsed Klinefelter's paper for $800, he had a conveyance of one-half of his property and a judgment of $1000 as security for his endorsement. If this had been stated in his letter, the company never would have sold this machine to Klinefelter. The question whether these facts were withheld through improper motives, and to obtain a credit for an individual he did not consider worthy of such credit, or whether they were not withheld through dishonest or impure motives, and that he honestly believed, at the time, that Klinefelter was worthy of credit, and would have given him credit, as he stated, was fairly put to the jury, by the court, with the instruction, that in the first case put, the defendant would be responsible for practising such a deceit, and in the second, or alternative case, there would be no such fraud or deceit as would subject him to damages. The same idea pervades the answers to the plaintiff's points; and we can perceive no error in the answers themselves, or in the mode in which the case was left to the jury.

It was also in evidence, that there were other judgments against Klinefelter at the time of this transaction, besides Rheem's judgment, and that executions on one of these judgments, and on

Rheem's judgment, were issued in 1857, and property sold under them. The judgment in favour of Jacob Rheem was entered on the 16th August 1836. On the 10th March 1857, a *fi. fa.* was issued and stayed; and on the 9th May 1857, an alias *fi. fa.*, on which a sale of Klinefelter's personal property took place on the 20th June 1857, and this spoke-machine was sold to Jacob Rheem, the plaintiff, for $230; three items sold, the spoke-machine, engine, and boiler, produced $730—which, with other moneys, were appropriated to Rheem's judgment.

The court admitted evidence, showing that this machine was an infringement of another patent, but instructed the jury to discard from their consideration this evidence, as irrelevant to the issue trying—and this is assigned for error. Klinefelter received and kept the machine, and never complained of this alleged defect, or attempted to set it up as a defence; and the defendant purchased it at the sheriff's sale of Klinefelter's property, and became the owner of it. Neither Klinefelter nor Rheem ever offered to return the spoke-machine, but both retained it as a thing of value. Under these circumstances, this evidence formed no defence in this suit, and was, therefore, properly withdrawn from the consideration of the jury.

Judgment affirmed.