MANUEL E. COHEN, executor, vs. McDONNELL DOUGLAS
CORPORATION & another.[1]

Suffolk.   March 9, 1983. — June 7, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Negligence,* Manufacturer of aircraft, Airline, Emotional distress.   *Uniform Commercial Code,* Warranty.   *Warranty.   Conflict of Laws. Actionable Tort.   Emotional Distress,* Physical injuries to another. *Words,* "Appropriate relation."

A claim by a son, a California resident, individually and as executor of his mother's estate, against an airplane manufacturer, a Maryland corporation with its principal place of business in Missouri, for breach of warranty resulting in the crash of an airplane in Illinois, in which the plaintiff's brother was killed, and the subsequent death in Massachusetts of the mother, a Massachusetts resident, as the result of her emotional response to learning of her son's death in the crash, bore an "appropriate relation" to Massachusetts within the intent of G. L. c. 106, § 1-105, so as to be governed by Massachusetts law.   [330-337]

A son's claims, individually and as executor of his mother's estate, against an airplane manufacturer to recover damages for his mother's death as the result of her emotional response to learning of her other son's death in an airplane crash, stated no cause of action recognized in Massachusetts under G. L. c. 106, § 2-318, for breach of warranty. [337-339]

Claims of negligence and reckless conduct, advanced by a son individually and as executor of his mother's estate, to recover damages for his mother's death as a result of her emotional response to learning of her other son's death in an airplane crash, stated no cause of action on which relief might be granted under Massachusetts law, where the mother did not observe either the crash or the injuries to her son, but, rather, learned of her son's death only when she was called by telephone seven hours after the crash.   [339-343]

CERTIFICATION of questions of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

[1] American Airlines, Inc.

*Alan G. Miller (June E. Roberts* with him) for McDonnell Douglas Corp.

*Robert S. Frank, Jr. (John N. Garner* with him) for the plaintiff.

*John F. Mee,* for American Airlines, Inc., was present but did not argue.

HENNESSEY, C.J.  This case comes before the court on certification from the United States District Court for the District of Massachusetts (see S.J.C. Rule 1:03, § 1, as appearing in 382 Mass. 700 [1981]) of three principal and several subsidiary questions involving breach of warranty and negligent infliction of emotional distress.

The certification arises out of a civil action pending in the United States District Court in which the plaintiff seeks compensatory and punitive damages (1) on behalf of the estate of Nellie Cohen for the conscious pain and suffering she endured after learning of the death of one of her sons in an airplane crash, and (2) on the plaintiff's own behalf for the wrongful death of his mother, Nellie Cohen.  The plaintiff asserts these claims against both the defendants McDonnell Douglas Corporation (McDonnell Douglas), and American Airlines, Inc (American Airlines), on theories of negligence.  The plaintiff asserts additional claims against the defendant McDonnell Douglas, based on theories of strict liability and breach of warranty.

The defendants moved for summary judgment and dismissal of all claims in the action in the United States District Court on the grounds that Illinois law should be applied and that the relevant law of Illinois does not permit recovery by the plaintiff.  On September 16, 1982, a United States District Court judge issued a memorandum and order in which he determined that Massachusetts law applies to the plaintiff's negligence and strict liability claims.  The judge further determined that the plaintiff is not entitled under Massachusetts law to recover in his claim against McDonnell Douglas based on strict liability in tort.  See *Swartz* v. *General Motors Corp.,* 375 Mass. 628 (1978).  The judge, however, resolved no other issues and instead certified to

this court the issues of (1) which State's law applies to the plaintiff's breach of warranty claim; (2) whether, if Massachusetts law applies to the plaintiff's breach of warranty claim, on the facts submitted, the plaintiff is entitled to recover damages; and (3) whether, if Massachusetts law applies to the plaintiff's claims based on negligence, on the facts submitted, the plaintiff is entitled to recover damages. The judge did not certify the question whether Massachusetts law applies to the plaintiff's claim based on negligence, because he had concluded that there was controlling precedent on this issue. The judge requested, however, that, if his determination on this issue were in error, we treat the issue of choice of law on the negligence claims as a certified question.

On the facts submitted to this court, we conclude that the law of Massachusetts applies to both the plaintiff's breach of warranty and negligence claims and that, under Massachusetts law, the plaintiff is not entitled to recover damages under either of these theories.

The facts submitted to us are not disputed in any material respect. The deceased, Nellie Cohen, was a Massachusetts resident. She had two sons, the plaintiff, Manuel, a California resident, and Ira, who was an Illinois resident. On May 25, 1979, Ira Cohen was killed in an airplane crash that occurred near Chicago, Illinois, during a flight that was en route from Chicago to Los Angeles, California.[2] The airplane which crashed was operated by the defendant, American Airlines, and manufactured by the defendant, McDonnell Douglas.

The plaintiff, Ira's brother, learned of the accident while listening to a radio broadcast in California, and surmised that his brother had been a passenger on the aircraft involved. Some seven hours after the airplane crash, the plaintiff telephoned his mother, Nellie Cohen, in Massachu-

---

[2] A lawsuit brought on behalf of the estate of Ira Cohen seeking recovery for Ira's wrongful death, is presently pending in the Circuit Court of Cook County, Illinois.

setts to inform her of Ira's death.[3]  Shortly after being told
of her son's death, Nellie Cohen suffered a series of painful
angina attacks, and two days later she died of a heart at-
tack.  It was assumed for purposes of the motions for sum-
mary judgment that Nellie Cohen's angina attacks and sub-
sequent death were the direct result of her emotional
response to learning of the death of her son Ira.

The defendant, American Airlines, is a Delaware corpor-
ation with a principal place of business in New York.[4]  The
defendant, McDonnell Douglas, is a Maryland corporation
which has its principal place of business in Missouri.  The
plaintiff is the executor of the estate of Nellie Cohen, and is
her only surviving heir and next of kin.

QUESTION ONE.

"What law would the courts of Massachusetts apply with
respect to the legal sufficiency of the plaintiff's claim
against McDonnell Douglas Corporation for breach of war-
ranty?"

DISCUSSION

The plaintiff's breach of warranty claim is based on
§ 2-318 of the Uniform Commercial Code.  G. L. c. 106,
§ 2-318.  We have stated that "[c]onflict of law problems

---

[3] The airplane crash occurred at approximately 3 P.M., Central Day-
light Time.  The plaintiff telephoned his mother at approximately 11
P.M., Eastern Daylight Time.

[4] The United States District Court judge found that American Airlines
has a principal place of business in New York.  It appears that sometime
during 1979, the year in which the crash occurred, American Airlines
changed its principal place of business from New York to Texas.  See In re
Air Crash Disaster near Chicago, Ill. on May 25, 1979, 644 F.2d 594, 607
(7th Cir.), cert. denied sub nom. Lin v. American Airlines, Inc., 454 U.S.
878 (1981).  The defendant, American Airlines, admits that its "principal
corporate offices" are in Texas.  We, however, assume for the purposes of
deciding the questions certified to us, that at the time of the Illinois air-
plane crash, American Airlines had its principal place of business in New
York.

arising under the Uniform Commercial Code are resolved by the Code." *Industrial Nat'l Bank* v. *Leo's Used Car Exch., Inc.,* 362 Mass. 797, 800 (1973). Section 1-105 of G. L. c. 106 provides that, in the absence of an agreement between the parties as to which State's law shall govern, the provisions of the Massachusetts Uniform Commercial Code shall apply to "transactions bearing an appropriate relation to this state." There is no evidence that there was any agreement to the effect that a particular State's law should apply to the plaintiff's breach of warranty claim. Hence, resolution of the choice of law issue depends on the interpretation of the words "appropriate relation."

In cases where we have addressed whether a particular transaction bears an appropriate relation to this Commonwealth, we have not attempted a definition of these words. See *Nevins* v. *Tinker,* 384 Mass. 702, 704-705 (1981); *Industrial Nat'l Bank* v. *Leo's Used Car Exch., Inc., supra; Skinner* v. *Tober Foreign Motors, Inc.,* 345 Mass. 429, 432 (1963). Courts in other jurisdictions have not adopted a uniform definition of these words. See Note, Conflicts of Laws and the "Appropriate Relation" Test of Section 1-105 of the Uniform Commercial Code, 40 Geo. Wash. L. Rev. 797, 802-803 (1972). In interpreting the words "appropriate relation" as used in § 1-105 of the Massachusetts Uniform Commercial Code, G. L. c. 106, § 1-105, we are guided by the Uniform Commercial Code Comment, which states that "[i]n deciding [what is an appropriate relation], the court is not strictly bound by precedents established in other contexts." Although the Comment to the Code indicates that we are not strictly bound by established choice of law principles, we note that such principles are a useful starting point in determining whether the Commonwealth of Massachusetts bears an "appropriate relation" to a given transaction or occurrence. Indeed, in this case, the plaintiff's breach of warranty claim reveals so many factual contacts with different States that it would be an extremely difficult task to resolve the choice of law issue without examining established doctrines. From the record before us, we know

that Nellie Cohen was a Massachusetts resident, that she learned of Ira Cohen's death while she was in Massachusetts, and that she suffered angina attacks and ultimately died in Massachusetts. We also know that Ira Cohen was a resident of Illinois and that the airplane crash occurred in Illinois. We further know that the plaintiff has at all times relevant to this action been a resident of California. We are informed that McDonnell Douglas is a Maryland corporation with its principal place of business in Missouri, and that American Airlines is a Delaware corporation with its principal place of business in New York.[5] It further appears that the plaintiff alleges that the conduct of McDonnell Douglas which caused the crash occurred in California where the airplane was manufactured and designed.[6] See *In re Air Crash Disaster near Chicago, Ill. on May 25, 1979,* 644 F.2d 594, 604 (7th Cir.), cert. denied sub nom. *Lin* v. *American Airlines, Inc.,* 454 U.S. 878 (1981).[7]

In light of these various factual contacts with different States, it is useful to examine established choice of law principles in resolving whether, in this case, Massachusetts bears an "appropriate relation" to the plaintiff's claim. We agree with the parties that since "a claim for breach of warranty of merchantability is in essence a tort claim," *Wolfe* v. *Ford*

[5] See note 4, *supra.*

[6] The record reveals that American Airlines' allegedly tortious conduct occurred in Oklahoma where the airplane was maintained. The plaintiff does not assert, however, a breach of warranty claim against the defendant American Airlines.

[7] We note that the usual first step in applying conflict of law principles is to ascertain whether there is a conflict among the laws of the various States involved. See, e.g., *Henderson* v. *State Farm Mut. Auto. Ins. Co.,* 59 Wis. 2d 451, 454 (1973) ("[b]efore a conflicts-of-laws problem is presented, it must appear that the ultimate selection of law will affect the outcome"). See also *In re Air Crash Disaster near Chicago, Ill. on May 25, 1979,* 644 F.2d 594, 605 (7th Cir. 1981); *Erwin* v. *Thomas,* 264 Or. 454, 456-457 & n.1 (1973). The parties in this case have discussed the substantive law of only Illinois. Furthermore, they are not in agreement as to what the position of the Illinois courts would be with regard to the plaintiff's claims. Rather than opine about the law of the several States, we assume, for the purposes of responding to the Federal District Court judge's certified questions, that there is indeed a conflict of laws.

*Motor Co.*, 386 Mass. 95, 99 (1982), it is appropriate to view the choice of law issue raised by the plaintiff's claim in light of choice of law principles applicable in tort actions. See, e.g., *Bilancia* v. *General Motors Corp.*, 538 F.2d 621, 623 (4th Cir. 1976); *Paoletto* v. *Beech Aircraft Corp.*, 464 F.2d 976, 980-981 (3d Cir. 1972); *Whitaker* v. *Harvell-Kilgore Corp.*, 418 F.2d 1010, 1016 n.9 (5th Cir. 1969); *Uppgren* v. *Executive Aviation Servs., Inc.*, 326 F. Supp. 709, 716-717 (D. Md. 1971); *McCrossin* v. *Hicks Chevrolet, Inc.*, 248 A.2d 917 (D.C. App. 1969).

The United States District Court judge in this case observed that the allegedly defective product (the airplane) was not physically present in this State, and that therefore it might be inappropriate to treat the plaintiff's breach of warranty claim as a negligence claim for purposes of applying choice of law principles. See *Oresman* v. *G. D. Searle & Co.*, 321 F. Supp. 449, 451 (D.R.I. 1971) (a State's interest in enforcing warranties involves the protection of its citizens from the commercial movement of defective goods into that State). Although the airplane was not present in this State, the plaintiff's claim centers on injury allegedly caused in this State by the product. Clearly a State's interest in enforcing warranties involves not only the physical presence of a product within a State but also the injury caused within a State by that product. Thus, it is appropriate in this case to examine tort choice of law principles in deciding whether the law of Massachusetts applies to the plaintiff's breach of warranty claim.

The law of Massachusetts is that ordinarily "the substantive law governing an action of tort for physical injury is that of the place where the injury occurred." *Brogie* v. *Vogel*, 348 Mass. 619, 621 (1965). In *Pevoski* v. *Pevoski*, 371 Mass. 358, 360 (1976), we stated, however, that "on the particular facts of a case another jurisdiction may sometimes be more concerned and more involved with certain issues . . . ." See *Choate, Hall & Stewart* v. *SCA Servs., Inc.*, 378 Mass. 535, 541 (1979); *Saharceski* v. *Marcure*, 373 Mass. 304, 310-311 (1977). The place where the injury oc-

curred "is the place where the last event necessary to make an actor liable for an alleged tort takes place." *Orr* v. *Sasseman,* 239 F.2d 182, 186 (5th Cir. 1956). See *Strogoff* v. *Motor Sales Co.,* 302 Mass. 345, 347 (1939). In this case, Nellie Cohen's injury occurred in Massachusetts where she learned of the death of her son and where, after suffering several angina attacks, she died.

The defendant McDonnell Douglas contends, however, that the place of injury in this case should be deemed to be the place where the airplane crash occurred and where Ira Cohen was killed. McDonnell Douglas relies on cases involving claims for loss of consortium where some courts have applied the law of the place of the wrongful conduct rather than that of the marital domicil. See, e.g., *Madison* v. *Deseret Livestock Co.,* 574 F.2d 1027, 1032 (10th Cir. 1978); *Sestito* v. *Knop,* 297 F.2d 33, 34 (7th Cir. 1961); *Jordan* v. *States Marine Corp.,* 257 F.2d 232, 233-234 (9th Cir. 1958); *Miller* v. *Holiday Inns, Inc.,* 436 F. Supp. 460, 462 (D. Va. 1977); *McVickers* v. *Chesapeake & O. Ry.,* 194 F. Supp. 848, 849 (E.D. Mich. 1961); *Folk* v. *York-Shipley, Inc.,* 239 A.2d 236, 238-239 (Del. 1968); *Harford Mut. Ins. Co.* v. *Bruchey,* 248 Md. 669, 672-675 (1968); *Conway* v. *Ogier,* 115 Ohio App. 251, 254 (1961); *Casey* v. *Manson Constr. & Eng'r Co.,* 247 Or. 274, 292 (1967). It analogizes cases involving loss of consortium claims to the case at bar in that, although Nellie Cohen's executor may bring an independent action for her injuries, his cause of action derives from the injuries initially inflicted on Ira Cohen.

The loss of consortium cases are, however, inapposite. Those courts which have concluded that the law of the place of the wrongful conduct, rather than that of the marital domicil, should apply in loss of consortium cases, have reasoned that an action for loss of consortium is derived from injuries inflicted on one's spouse and that since the place of injury is the State where the last event necessary to make the actor liable takes place, the law of the place of injury to the other spouse should apply. See, e.g., *McVickers*

v. *Chesapeake & O. Ry.*, *supra* ("[p]laintiff's possible right of action resulted immediately upon the injury to her husband"); *Folk* v. *York-Shipley, Inc.*, *supra* ("[the plaintiff's argument] that the injury she complains of is the subsequent inability of her husband to perform part of his marital duties, and that therefore the injury took place in [the marital domicil], fails to recognize the distinction between injury and damage"). In contrast, the cause of action for breach of warranty alleged on behalf of Nellie Cohen's estate is an action for bodily injury to her which resulted from learning of injury allegedly inflicted on her son by the defendant. Thus, the State where the last event necessary to make McDonnell Douglas liable allegedly occurred is the State in which Nellie Cohen learned of the injury to her son and suffered severe emotional distress herself.[8]

We observe further that, even if, as the defendant urges, we were to follow the loss of consortium cases, it would not necessarily follow that we would apply the law of the place of the airplane crash (Illinois) as the defendant also urges. We point out that the consortium cases upon which the defendant relies looked to the law of the place of the tortious conduct. In this case, the place of the conduct which

---

[8] We point out that in several recent cases, courts have rejected the view that the law of the place of the tortious conduct controls in loss of consortium cases. See *Linnell* v. *Sloan*, 636 F.2d 65, 66-67 (4th Cir. 1980); *Card* v. *American Brands Corp.*, 401 F. Supp. 1186, 1188 (S.D. N.Y. 1975); *Berghammer* v. *Smith*, 185 N.W.2d 226, 231-233 (Iowa 1971); *Erwin* v. *Thomas*, 264 Or. 454, 459-460 (1973). We have not confronted a choice of law problem in the context of a loss of consortium claim. Even though we need not decide the issue in this case, we note that we could reject the defendant's analogy to consortium cases on the additional ground that we would not follow their approach. Indeed, we recently concluded in *Feltch* v. *General Rental Co.*, 383 Mass. 603, 606-608 (1981), that a claim for loss of consortium is independent of the claim of the injured spouse. Thus, there is some support in our case law for a different approach to the choice of law problem in consortium cases from that espoused by the cases upon which the defendant relies. Cf. *Olsen* v. *Bell Tel. Labs., Inc.*, 388 Mass. 171, 176-177 (1983) ("[a]lthough a cause of action for loss of consortium in most cases would accrue at the same time as would the action for personal injuries, this may not always be true").

caused the crash appears to be a place entirely separate from the place of the crash.[9] See discussion, *supra*. Thus, even under the defendant's approach, the law of Illinois would not necessarily apply.

The Restatement (Second) of Conflict of Laws (1971) specifically addresses situations where tortious conduct occurred in one State and injury occurred in another. Comment e to § 146 of the Restatement provides that "[i]n such instances, the local law of the state of injury will usually be applied to determine most issues involving the tort." The comment further provides that "[t]he local law of the state where the personal injury occurred is most likely to be applied when the injured person has a settled relationship to that state, either because he is domiciled or resides there or because he does business there." *Id.*[10] Under the Restatement approach, Massachusetts law would apply in this case because Nellie Cohen, a resident of Massachusetts, was injured and died in Massachusetts.

On the record submitted to the court in this case, we conclude that no other State, including Illinois, appears to have a more significant interest in the plaintiff's claim than that

---

[9] In addition to relying on the loss of consortium cases, the defendant also points to language in *Pevoski* v. *Pevoski*, 371 Mass. 358, 359 (1976), to support its claim that Illinois law should apply. In *Pevoski*, we stated that generally "the law of the jurisdiction in which the accident occurred" should be applied. See also *Jackson* v. *KLM-Royal Dutch Airlines*, 459 F. Supp. 953, 955-956 (S.D. N.Y. 1978) (under California choice of law rules applying law of place of airplane crash). It is clear, however, that in *Pevoski* we were referring to the place of the "accident" because it was the place of both the tortious conduct causing the accident and the injury. See *id.* Similarly, the place of the crash in *Jackson* was also the place of the injury as well as, it appears, of the tortious conduct. See *Jackson*, *supra*. Neither *Pevoski* nor *Jackson* contemplated a situation such as the one in the case at bar, where the tortious conduct causing an accident, the accident itself, and the injury resulting may all have occurred in different States.

[10] Comment f to Restatement (Second) of Conflict of Laws § 175 (1971) contains a virtually identical provision for wrongful death actions: "The local law of the state where the injury occurred is most likely to be applied when the decedent had a settled relationship to that state, either because he was domiciled or resided there or because he did business there."

of Massachusetts. Although the record reveals a variety of contacts with other States, none of these contacts is sufficient to outweigh the interest of Massachusetts in determining whether conduct which causes injury in this State to a resident of this State shall result in liability. Furthermore, although the parties have agreed that the law of Illinois will apply to the claim for Ira Cohen's death, that fact does not require application of Illinois law to the separate claim based on Nellie Cohen's injuries and resulting death. See *Choate, Hall & Stewart* v. *SCA Servs., Inc., supra* at 542 ("There is nothing unusual about the laws of different States applying respectively to various phases of a single transaction or incident").

## QUESTION TWO.

"If the courts of Massachusetts would apply the law of Massachusetts to the plaintiff's claim for breach of warranty against McDonnell Douglas Corporation, on the facts stated does the plaintiff have a claim for breach of warranty upon which relief can be granted under Massachusetts law?"

## DISCUSSION.

Under Massachusetts law, the plaintiff's breach of warranty claim is governed by G. L. c. 106, § 2-318, as amended through St. 1974, c. 153, which provides in relevant part that "[l]ack of privity . . . shall be no defense in any action brought against the manufacturer . . . to recover damages for breach of warranty, express or implied . . . if the plaintiff was a person whom the manufacturer . . . might reasonably have expected to use, consume or be affected by the goods." The plaintiff argues that Nellie Cohen was "affected" by McDonnell Douglas' aircraft in a way that allows the imposition of liability under G. L. c. 106, § 2-318. We disagree.

We point out initially that the plaintiff's interpretation of the language of § 2-318 would result in a substantial expan-

sion of liability for infliction of emotional distress. In Massachusetts, both intentional infliction of emotional distress and negligent infliction of emotional distress which results in physical harm are compensable. See *Payton* v. *Abbott Labs,* 386 Mass. 540, 549-550, 552-555 (1982); *Agis* v. *Howard Johnson Co.,* 371 Mass. 140-141 (1976). Both intentional and negligent infliction of emotional distress involve wrongful conduct. A cause of action for breach of warranty, however, like a cause of action based on the doctrine of strict liability, does not require proof of fault. See *Ault* v. *International Harvester Co.,* 13 Cal. 3d 113, 118 (1974); W. Prosser, Torts § 95, at 636 (4th ed. 1971), and cases cited; Restatement (Second) of Torts § 402 (1965). Cf. *Back* v. *Wickes Corp.,* 375 Mass. 633, 639-641 (1978). Accordingly, we are asked, in effect, to impose liability for nonculpable conduct. See *Shepard* v. *Superior Court,* 76 Cal. App. 3d 16, 22 (1977) (Kane, J., dissenting). We are aware of only two cases where courts have addressed this issue. See *Shepard* v. *Superior Court, supra* at 20-21 (strict liability); *Walker* v. *Clark Equip. Co.,* 320 N.W.2d 561, 562-563 (Iowa 1982) (strict liability and breach of warranty). In both cases, the court allowed recovery.

We need not resolve the issue under Massachusets law, however, because we conclude that even if damages for emotional distress suffered as a result of injuries inflicted on another were recoverable under G. L. c. 106, § 2-318, the plaintiff in this case, nevertheless, would be denied recovery. General Laws c. 106, § 2-318, indicates that recovery should be allowed only if it was reasonably foreseeable that the plaintiff was a person who would be "affected" by the goods in question. Similarly, we stated in *Dziokonski* v. *Babineau,* 375 Mass. 555, 567 (1978), in discussing the common law cause of action for negligent infliction of emotional distress, that "reasonable foreseeability is a proper starting piont in determining whether an actor is to be liable for the consequences of his negligence." It seems clear that McDonnell Douglas and American Airlines could reasonably foresee that their negligence or breach of

warranty that resulted in an airplane crash which killed all of the passengers would cause severe emotional distress and physical injuries to relatives of individuals killed in the crash who learned of the deaths. In *Dziokonski*, however, we further indicated that the test for liability does not end with the inquiry whether a particular plaintiff's injury was reasonably foreseeable. Rather, we indicated that other factors must be considered in establishing limits on the scope of liability. *Id.* at 568. We think that the Legislature, in enacting G. L. c. 106, § 2-318, did not intend that recovery be allowed in all cases where a plaintiff's injury was reasonably foreseeable. Rather, we conclude that, if recovery for emotional distress suffered as a result of injuries inflicted on another were recoverable at all under G. L. c. 106, § 2-318, it is consistent with legislative intent that the scope of liability extend no further than the scope of liability under the common law action for negligent infliction of emotional distress. Since we determine, *infra*, in discussing the plaintiff's claim for negligent infliction of emotional distress, that Nellie Cohen's injury is not compensable, we conclude that the plaintiff, similarly, does not state a cause of action for breach of warranty.

QUESTION THREE.

"With respect to the plaintiff's claim against both defendants for negligent and reckless conduct causing the death of Ira Cohen, on the facts stated under Massachusetts law does the plaintiff have a legally sufficient claim upon which relief can be granted for (a) compensatory damages for the conscious pain and suffering of Nellie Cohen? (b) compensatory damages for the wrongful death of Nellie Cohen? (c) punitive damages for the wrongful death of Nellie Cohen?"[11]

---

[11] The United States District Court judge also requested us to treat the choice of law issue with regard to the plaintiff's negligence claim as a certified question if he were in error in his determination that Massachusetts law applies to all aspects of the plaintiff's negligence claim. We perceive

## Discussion

In *Dziokonski* v. *Babineau*, 375 Mass. 555, 562-568 (1978), we held that, under Massachusetts law, recovery in actions for negligent infliction of emotional distress would be allowed in some circumstances even though the plaintiff was not within the "zone of danger" created by the defendant's negligent conduct. See discussion of *Payton* v. *Abbott Labs*, 386 Mass. 540, 550-551 (1982). Instead of the rigid "zone of danger" limitation, we concluded that a test of "reasonable foreseeability" should be applied in determining whether an actor is liable for a plaintiff's emotional distress caused by the defendant's negligence toward another person. *Dziokonski* v. *Babineau, supra* at 567. We further determined, however, that the decision whether to impose liability should not be made merely by reference to what is logically reasonably foreseeable but rather that other factors, "such as where, when, and how the injury to the third person entered into the consciousness of the claimant, and what degree there was of familial or other relationship between the claimant and the third person," should be examined in deciding whether to impose liability. *Id.* at 568, citing *Dillon* v. *Legg*, 68 Cal. 2d 728, 740-741 (1968). We stated: "It does not matter in practice whether these factors are regarded as policy considerations imposing limitations on the scope of reasonable foreseeability . . . or as factors bearing on the determination of reasonable foreseeability itself. The fact is that, in cases of this character, such factors are relevant in measuring the limits of liability for emotionally based injuries resulting from a defendant's negligence" (citation omitted). *Dziokonski* v. *Babineau, supra*. We explained that in some instances the question will be "properly one for the trier of fact, while in others the

---

no error in his conclusion that Massachusetts law applies to the compensatory aspects of the plaintiff's negligence claim. Since we deny recovery on this claim we need not consider which State's law would apply to the issue of the availability of punitive damages for the alleged wrongful death of Nellie Cohen.

claim will fall outside the range of circumstances within which there may be liability." *Id.* Although consideration of these other factors may in some cases result in the imposition of an arbitrary cutoff on the scope of liability, we conclude that these factors, nevertheless, must be employed for policy reasons to prevent an unreasonable expansion of liability for the multitude of injuries that could fall within the bare principle of reasonable foreseeability.

In *Dziokonski,* we specifically held that "allegations concerning a parent who sustains substantial physical harm as a result of severe mental distress over some peril or harm to his minor child caused by the defendant's negligence state a claim for which relief might be granted, where the parent either witnesses the accident or soon comes on the scene while the child is still there." *Id.* at 568. In *Ferriter* v. *Daniel O'Connell's Sons,* 381 Mass. 507, 517-519 (1980), we applied the principles set out in *Dziokonski* and concluded that allegations by the wife and children of an employee who was seriously injured through his employer's negligence, that they suffered mental anguish and physical harm as a result of observing the employee in a hospital immediately after the accident were sufficient to state a claim upon which relief might be granted. We reasoned that "[a] plaintiff who rushes onto the accident scene and finds a loved one injured has no greater entitlement to compensation for that shock than a plaintiff who rushes instead to the hospital." *Id.*

The plaintiff in this case argues that under the principles of *Dziokonski,* liability for Nellie Cohen's mental distress and resulting death should be imposed. We disagree. Nellie Cohen did not learn of her son's death until seven hours after the airplane crash. She did not observe the accident or her son. Rather, she was informed by means of a telephone conversation at her home in Massachusetts. Thus, at all pertinent times, Nellie Cohen was more than 1,000 miles from the scene of the crash. Although Nellie Cohen undoubtedly suffered severe mental anguish and physical harm as a result of the alleged negligence toward

her son, the manner in which she learned of her son's death precludes the imposition of liability.

We are aware of no case where a court has imposed liability where the plaintiff was located a substantial distance from the scene of the accident and did not observe either the scene of the accident or the injuries inflicted on the victim. Rather, recovery has been denied. See *Saunders* v. *Air Florida, Inc.*, 558 F. Supp. 1233, 1235-1238 (D.D.C. 1983) (applying District of Columbia and California law and dismissing decedent's father's cause of action for emotional distress which he suffered while in California where he witnessed television scenes of an airplane accident in Washington, D.C. [or its aftermath] in which his son was killed, but did not witness the injuries inflicted on his son); *Burke* v. *Pan American World Airways, Inc.*, 484 F. Supp. 850, 851 (S.D. N.Y. 1980) (applying California law and dismissing claim of deceased's twin sister for emotional distress which she suffered while in California through "extrasensory empathy" at the time of her sister's death in an airplane crash in the Canary Islands); *Saxton* v. *McDonnell Douglas Aircraft Co.*, 428 F. Supp. 1047, 1052-1053 (C.D. Cal. 1977) (applying California law and dismissing claim on behalf of estate of decedent's mother who committed suicide after death of her son in airplane crash in France); *Kelley* v. *Kokua Sales & Supply, Ltd.*, 56 Hawaii 204, 206 (1975) (dismissing claim on behalf of estate of father and grandfather of decedents, for emotional distress which he suffered while in California after being informed by means of a telephone call of deaths in Hawaii);[12] *Williams* v. *Citi-*

---

[12] In *Campbell* v. *Animal Quarantine Station*, 63 Hawaii 557 (1981), the Supreme Court of Hawaii determined that the *Kelley* case did not preclude recovery for emotional distress resulting from the telephonic communication of the death of the family dog. *Campbell, supra* at 561-562. The court reasoned that in *Kelley*, it had "imposed a geographical limitation restricting recovery to those located within a reasonable distance from the scene of the tortious event." *Id.* According to the court, recovery was permissible in *Campbell* because the plaintiffs and their dog were both located in Honolulu. *Id.* Even under *Campbell*, the plaintiff in this case would be denied recovery because of the geographical limitation. Hence, we need not express any opinion as to

*zens Mut. Ins. Co.,* 94 Mich. App. 762, 764-765 (1980) (dismissing claim of decedent's mother for emotional distress where mother did not witness accident nor become aware of it at a time "fairly contemporaneous" with it). *Schurk* v. *Christensen,* 80 Wash. 2d 652, 654-657 (1972) (dismissing claim of mother of sexually abused child for emotional distress where mother did not observe injuries to child but learned of actions at a later date from a third person). Among the many persuasive reasons posited by these courts for denying liability is that the class of plaintiffs would be unreasonably large. See *Saxton* v. *McDonnell Douglas Aircraft Co., supra* at 1053; *Kelley* v. *Kokua Sales & Supply, Ltd., supra* at 208-209. We also point out that the injury to Nellie Cohen did not result from a sensory perception of the injuries caused to her son or the injury producing event. Thus, the emotional distress which she suffered is more akin to the anguish that any person feels after being informed of death or injury to a loved one than it is to the distress, which we have deemed compensable, that involves firsthand observation of a defendant's negligence or the consequences thereof. Accordingly, we conclude that, as a matter of law, liability may not be imposed under the doctrine of negligent infliction of emotional distress for the injury caused to Nellie Cohen and, therefore, the plaintiff's claims for her conscious pain and suffering, as well as his own claim for her wrongful death, do not state a claim upon which relief may be granted. See, e.g., *Bergeron* v. *Forest,* 233 Mass. 392, 399 (1919) (wrongful death statute does not impose liability for death where defendant does not owe a duty of care to decedent). See also *Oliveria* v. *Oliveria,* 305 Mass. 297, 302 (1940), overruled in part on other grounds, *Sorensen* v. *Sorensen,* 369 Mass. 350, 352-353 (1975).

---

whether we would follow the holding of the Supreme Court of Hawaii that one who suffers emotional distress after learning by telephonic communication of injury to another may recover if the tortious event and the plaintiffs were located in the same city.

In summary, in answer to the questions certified to this court, on the facts as submitted to us, we conclude that the law of Massachusetts applies to both the plaintiff's breach of warranty and negligence claims and that, under Massachusetts law, the plaintiff is not entitled to recover damages under either of these theories.