EMERY CORP., d/b/a Hugh Nelson Carpet Mills, Plaintiff,

v.

CENTURY BANCORP., INC. d/b/a Century Bank & Trust Company and Martin Daley, Defendants.

Civ. No. 83–0277–S.

United States District Court, D. Massachusetts.

May 7, 1984.

Stewart F. Grossman, Moulton, Looney & Grossman, Boston, Mass., for plaintiff.

Hugh J. Hutchinson, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

The plaintiff, Emery Corporation ("Emery") brings this action against defendants Century Bancorp, Inc. ("Century") and Martin Daley ("Daley"). Emery charges the defendants with fraud, negligent misrepresentation, negligence, and violation of the Pennsylvania consumer protection statute. The defendants have moved to dismiss the case on the basis that the Massachusetts Statute of Frauds, M.G.L. c. 259, § 4, bars all of the plaintiff's claims.

Emery commenced this diversity action on March 10, 1982 in the United States District Court for the Eastern District of Pennsylvania. The defendants moved to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim. Without deciding these issues, the court transferred this case *sua sponte* to this district pursuant to 28 U.S.C. § 1404.

For the purpose of this motion, the following allegations from Emery's complaint must be taken as true. Emery is a Pennsylvania corporation with its principal place of business in Philadelphia. Daley, a Massachusetts citizen who was employed by Century as a senior vice president in charge of Century's commercial loan department, was authorized to provide credit information concerning its customers upon appropriate inquiry. On Emery's instruction, Emery's bank telephoned Daley and asked him for a credit reference for a Massachusetts company called Wilton-Royal, Inc. Emery's bank explained that Emery expected to receive about one million dollars in orders from Wilton-Royal over the next year, and that Wilton-Royal had asked for credit terms for the orders. Emery's bank then asked Daley to provide it with information relating to Wilton-Royal's credit worthiness.

Knowing the purpose and source of Emery's request, Daley responded that Wilton-Royal: (a) had been a Century customer for over ten years; (b) was owned by Roy Masters, who was engaged in the carpeting business and was well known to Century; (c) had a $150,000 line of credit secured by inventory and accounts receivables over the past three years which had been paid as agreed and reapproved annually; and (d) in Century's experience, had been a satisfactory credit risk. However, he knew or should have known the following facts which were not communicated to Emery's bank: (a) one of Wilton-Royal's creditors had attached the inventory of Wilton-Royal and one of its affiliated companies in connection with a two hundred thousand dollar obligation; (b) a garnishee's writ was served on Century as the result of the attachment; and (c) in Century's opinion,

Masters and his executive vice president were poor executives and poor risks.

Daley's comments were sent over interstate telephone lines and relied upon by Emery in Philadelphia, Pennsylvania. Emery in reliance upon the inaccurate credit information provided by Daley, agreed to sell carpeting to Wilton-Royal on credit. Emery sent its carpeting to Wilton-Royal. When Wilton-Royal later declared bankruptcy, it owed Emery $120,210.09.

■ This case raises a conflict between Pennsylvania and Massachusetts law. Pennsylvania common law has protected individuals from fraudulent representations about credit worthiness, *see, e.g., Rheem v. Naugatuck Wheel Co.*, 33 Pa. 358 (1859), and the state legislature has adopted a consumer protection statute which Pennsylvania courts have construed as applying to a wide variety of frauds. 73 P.S. § 201–1 *et seq.* (Purdon 1983); *see, e.g., Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974). For a century and a half, Massachusetts has had a Statute of Frauds which specifically prohibits actions based upon oral misrepresentations about another person's credit worthiness. M.G.L. c. 259, § 4.

The parties agree that Massachusetts choice of law principles govern which law should apply to the plaintiff's claims because this court's subject matter jurisdiction is based on diversity and the forum state is Massachusetts. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The parties also agree that Massachusetts has abandoned strict adherence to the rule of *lex loci delicti* for many types of actions and has adopted a flexible approach to choice of law questions which is similar to the approach used in the *Restatement (Second) of Conflict of Laws* (hereinafter "*Restatement*"). *See, e.g., Pevoski v. Pevoski*, 371 Mass. 358, 358 N.E.2d 416 (1976). The parties also agree that it is likely that a Massachusetts court considering this case would apply a rule similar or identical to the rule stated in Section 148(2) of the *Restatement.* This section states:

When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

(a) the place, or places where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

The disagreement between the parties concerns the question of what decision a Massachusetts court would make if confronted by the particular facts of this case.[1] The plaintiff relies heavily on Judge Keeton's recent decision in *Computer Systems Engineering, Inc. v. Qantel Corporation*, 571 F.Supp. 1365 (D.Mass.1983). In *Computer Systems*, a Massachusetts corporation sued a California corporation for breach of contract, fraud, and unfair and deceptive acts. Judge Keeton held that a Massachusetts court "would apply a test quite similar to if not identical with that of the *Restatement (Second)* to determine the law applicable in this case", *id.* at 1368, and concluded that a

---

**1.** At oral argument, both parties rejected my offer to certify this question to the Supreme Judicial Court.

Massachusetts court would apply Massachusetts law to the plaintiff's claims arising from Qantel's fraudulent misrepresentations.

The plaintiff's reliance on *Computer Systems* is misplaced. In *Computer Systems*, the defendant systematically transacted business in Massachusetts. It sent written representations into the state, sent employees here, and contracted with a Massachusetts business here. Moreover, the defendant obtained a benefit from a Massachusetts company. The defendant in that case should not have been surprised when a court applied Massachusetts law to its actions.

The facts of *Computer Systems* are very different from the facts of this case. Century's sole contact with Pennsylvania is its response to a telephone call made from Philadelphia. The facts alleged by the plaintiff do not indicate that Century either sought to do business in Pennsylvania or obtained a benefit from a Pennsylvania corporation. Indeed, in this case, a foreign corporation sought to obtain a gratuitous benefit from this Massachusetts defendant in order to transact business with another Massachusetts company.

*Tenna Manufacturing Company, Inc. v. Columbia Union National Bank and Trust Company*, 484 F.Supp. 1214 (W.D. Mo.1980), considered a fact pattern virtually identical to the facts of this case. In *Tenna*, a bank made factual misrepresentations in response to a telephone credit inquiry made by the plaintiff. These misrepresentations caused the plaintiff to extend credit to a buyer which later defaulted.

The court in *Tenna* applied the law of the defendant's state (Missouri), and held that the plaintiff's claim was barred by a Statute of Frauds provision similar to the Massachusetts provision. In comparing the governmental interests at stake in the case, the court found that the Missouri legislature, in adopting this provision, intended to protect Missouri defendants in Missouri courts from the claims of out-of-state plaintiffs. It also found that Ohio residents could not reasonably anticipate

that Ohio law would protect them in this type of transaction, and found that a telephone call should be viewed as a substitute for coming to the state of the defendant to obtain the desired credit information. *Id.* at 1218–1219.

Since *Tenna* is only persuasive authority, it does not resolve the question of which law a Massachusetts court would apply. However, on the basis of recent Massachusetts conflicts decisions, I have concluded that a Massachusetts court presented with the issue raised by this motion would use similar reasoning and would apply Massachusetts law to bar the plaintiff's claim.

I do not believe that the decision of a Massachusetts court would turn on the Restatement formula. First, the Massachusetts courts have cautiously avoided locking themselves into a mechanical application of Restatement standards. *See, e.g., Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 336–337, 450 N.E.2d 581, 586–587 (1983). Second, application of the six part test does not point definitively to the law of either state. Sections (a) and (b) point toward Pennsylvania law. Section (c) points to Massachusetts law. Section (d) is a split decision. Section (e) makes no sense at all in the context of this type of action. Section (f) would seem to point toward Pennsylvania law, although I doubt the appropriateness of this standard in cases such as this one in which it is not alleged that the defendant had any knowledge of or control over the contract formed as the result of its alleged misrepresentations.

The inconclusiveness and dubious applicability of the Restatement's standard illustrates the wisdom of the Supreme Judicial Court's reluctance to incorporate without qualification untested standards into Massachusetts law. I am confident that a Massachusetts court would, as the *Tenna* court did, reject a mechanical application of the *Restatement* in this particular case and would resolve this issue by comparing the strength of the governmental interests at stake in this case. *See Tenna, supra,* at 1218. *See also McDonnell Douglas, supra* at 336–337, 450 N.E.2d 581. ("Although

the record reveals a variety of contacts with other States, none of these contacts is sufficient to outweigh the interest of Massachusetts in determining whether conduct which causes injury in this State to a resident of this State shall result in liability.")

I believe that a Massachusetts court would conclude that Massachusetts has a stronger interest in this case. Both states seek to prevent fraud. The fact that Massachusetts and Pennsylvania have come to opposite conclusions concerning the best way of accomplishing this goal largely cancels this factor out of the equation.

Other considerations persuade me that Massachusetts has the stronger interest. First, the Massachusetts General Court has addressed the question of liability for untrue credit references with particularity and clarity, while the Pennsylvania legislature has not done so. *Cf. Restatement (Second),* § 6(2)(c). Second, Emery sought to do business in Massachusetts and knew or should have known it would be subject to Massachusetts law, while it requires metaphysical contortions to suggest that Century sought to do business "in" Pennsylvania. *Cf. id.,* § 6(2)(d). Indeed, it is not clear that a Pennsylvania court could exercise personal jurisdiction over Century on the basis of one unsolicited phone call. *See Bork v. Mills,* 458 Pa. 228, 329 A.2d 247 (1974) (requiring "continuous and substantial" business activities). Third, application of Massachusetts law would promote predictable results. *Cf. Restatement,* § 6(2)(f). The party making an unsolicited phone call is generally in a better position to discover and compensate for variations in state laws than the party receiving the call. This is particularly true in cases such as this one where the plaintiff's *agent* contacted the defendant, and the residency of the principal may or may not be clear to the defendant.

■ Accordingly, I conclude that Massachusetts has a greater interest in this case than Pennsylvania has, and that a Massachusetts court would apply Massachusetts law to this case. Since Emery concedes that its claims are barred if Massachusetts

law applies to this case, the defendant's motion is ALLOWED and the case DISMISSED.