Richard J. BERTRAND, Jr.,
Plaintiff, Appellant,

v.

QUINCY MARKET COLD STORAGE & WAREHOUSE COMPANY,
Defendant, Appellee.

No. 83–1659.

United States Court of Appeals,
First Circuit.

Argued Jan. 3, 1984.

Decided March 6, 1984.

James F. Freeley, Jr., Boston, Mass., with whom John E. Sheehy, Reading, Mass., was on brief, for plaintiff, appellant.

David J. Kerman, Boston, Mass., with whom John H. Mason, and Ropes & Gray, Boston, Mass., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and PETTINE,* Senior District Judge.

PETTINE, Senior District Judge.

The plaintiff, Richard J. Bertrand, Jr., is a former employee of defendant, Quincy Market Cold Storage & Warehouse Co. (Quincy Market). Bertrand's employment with Quincy Market ended in February 1982, when he either quit or was fired. He filed a complaint against Quincy Market in the district court on June 9, 1982, alleging four causes of action: (1) breach of an implied covenant of good faith and fair dealing in employment contracts; (2) violations of M.G.L. c. 93A and c. 176D (which regulate business practices); (3) intentional infliction of emotional harm; and (4) breach of his employment contract. The defendant moved for, and the district court below granted, summary judgment for the defendant on all four counts. We affirm.

Since this is a motion for summary judgment, we must view all facts in the light most favorable to the nonmoving party, which, here, is the plaintiff, Mr. Bertrand. Bertrand was a fork lift truck driver at Quincy Market's cold storage facility in Watertown, Massachusetts. In this capacity, he spent a great deal of time in refrigerated areas where the temperature was zero degrees fahrenheit. Plaintiff suffered problems with his neck and back due to the cold. These problems led to plaintiff filing for, and receiving, workmen's compensation payments. The plaintiff was away from his

* Of the District of Rhode Island, sitting by designation.

job, and receiving compensation payments, during three different periods. It was during the third of these periods that this dispute arose.

Plaintiff's third industrial leave of absence began on August 18, 1981. On November 5, 1981, the plaintiff was examined at the company's request by Dr. Andrew A. Kerhulas. Dr. Kerhulas advised the plaintiff at that time "to seek work outside the refrigeration plant, if possible." (Bertrand affidavit of July 13, 1982.) However, Dr. Kerhulas apparently felt that Bertrand was no longer disabled; in a letter to Quincy Market on December 11, 1981, Kerhulas stated:

It is my firm opinion that this boy has no definite objective findings at this time, his symptoms are mainly subjective. He has been told not to return to any work being exposed to cold storage and it is my opinion that this man's symptoms are all subjective at this time and I can find no definite disability in regards to his injury in his neck. I feel that he can return to work as of this date.

As a result, Quincy Market sent Bertrand a letter on February 3, 1982. Quincy Market stated that in light of Kerhulas' letter, a copy of which was enclosed, he was "directed" to return to work on February 8, 1982 or to contact Quincy Market immediately and provide evidence that he could not return to work. The letter reminded Bertrand of his contractual duty to report for work if he was not actually disabled, and concluded that "[i]f you fail to return to work as directed or to provide evidence establishing that you are not able to return to work, you will be considered to have voluntarily terminated your employment."

February 8 passed without word from Bertrand. On February 16, Bertrand sent Quincy Market a letter which simply acknowledged the February 3 letter and advised Quincy Market to send any other correspondence directly to Bertrand's attorney. Quincy Market sent Bertrand a letter on February 22 which, after recounting that Bertrand had not complied with the February 3 letter, stated that his employment had

been terminated. Bertrand filed this suit four months later.

In the first count of his complaint, the plaintiff alleges that Quincy Market breached an implied covenant of good faith and fair dealing in his employment contract. The district court ruled for the defendant because the plaintiff had not gone through the mandatory grievance and arbitration procedure prescribed in the plaintiff's union contract, citing this court's decision in *Hayes v. New England Millwork*, 602 F.2d 15 (1st Cir.1979). The plaintiff attempts to avoid *Hayes* in this court by contending that the union contract does not cover his claim in implied contract, that he was not a union member and, therefore, not bound by the union contract in February 1982, that this is a tort claim which is exempt from the bargaining agreement, and that he was discharged for failure to obey a direct order, which is exempted from arbitration by the agreement.

█ Although an implied covenant of good faith and fair dealing is, by its very nature, not explicitly in any contract, we think that the arbitration provisions of the union contract in this case would cover a dispute over a claim of this nature. Section 20.1 of the contract states that if the union claims that an employee was dismissed without just cause, the dispute must be submitted to the grievance and arbitration procedures. This provision surely is broad enough to cover the plaintiff's implied contract claim.

As to the plaintiff's allegation that he was dismissed for failure to obey a direct order, he claims that under section 20.2, such conduct, if proved, would be conclusively presumed to be just cause and not subject to arbitration, thereby allowing him to pursue his remedy in court. Even conceding the plaintiff's argument, here he contends that the direct order was merely a pretext for firing him. We cannot accept that section 20.2 bars arbitration in such a situation. Section 20.2 states that failure to obey a direct order will be conclusively presumed to be just cause only "if proved"; the order must be given in good faith and

not be a sham for some ulterior purpose. Therefore if the February 3 letter were a direct order, it could still come within the agreement if it was outrageous and merely a pretext for firing the plaintiff as he contends. The decision was, in any event, clearly for the arbitrator, not a court. *E.g., Mobil Oil v. Local 8–766, Oil, Chemical & Atomic Workers,* 600 F.2d 322, 327–28 (1st Cir.1979).

■ The plaintiff's claim that he was not covered by the contract is equally without merit. Bertrand contends that this was raised as an issue of fact by his affidavit of July 13, 1982, in which he says "I am not *presently* covered by the agreement between Quincy Market and local 504 ..." (emphasis added). His statement, however, does not go to the heart of his argument—whether he was covered by the contract in February 1982. However, we need not debate exactly what the plaintiff meant by this line in his affidavit because whether or not Bertrand was covered by the contract at a certain time is a question of interpreting the contract, which makes it a question of law. Various provisions in the contract evidence a clear intent for the contract to cover the employment rights of all employees in the refrigeration plant, including those on industrial leave of absence. Interestingly, the very affidavit which seeks to raise the issue of whether Bertrand was a union member covered by the contract also verifies the factual allegations of the complaint, among which are that he was a union member covered by the contract.

■ The plaintiff's argument that the defendant's breach of its implied covenant of good faith and fair dealing is a tort and not subject to grievance procedure is misplaced. By definition this is an implied covenant in an employment contract; perforce it is a contract claim and not a tort.

Finally, we doubt that the Massachusetts courts would ever imply the covenant in this case. This covenant has generally been implied in contracts of employment "at will." This, however, was not an at will employment contract; the company had negotiated away its right to discharge anyone except for "just cause." Since there is an explicit contractual provision giving the employee greater protection than the implied covenant, there is no need to imply the covenant. *See* Blades, *Employment At Will v. Individual Freedom: On Limiting the Abusive Exercise of Employer Power,* 67 Colum.L.Rev. 1404, 1410–13 (1967) (comparing the protections of discharge only for just cause provisions in union contracts with the lack of protection given at will employees).

■ The same logic by which we sustain the district court's summary judgment as to Count I for failure to comply with the contract's grievance procedures also applies to Count IV. Count IV alleges that the plaintiff's union contract was breached by his discharge. If the termination subject to the February 3 letter was truly a pretext, then the union should have grieved it. If it was not pretext, then the employer had just cause. Either way, the plaintiff has no cause of action now.

■ Count II of the complaint alleged violations of M.G.L. c. 93A and 176D. M.G.L. c. 93A prohibits deceptive trade practices while M.G.L. c. 176D regulates deceptive practices in the insurance industry. However, even though the defendant is a self-insurer under the workmen's compensation statute, it does not fall within the terms of c. 176D. Section 1 of the chapter states that it applies to any self-insurer "which is engaged in the business of insurance ...." A self-insurer under the workmen's compensation law does not thereby become an insurance company. Similarly, c. 93A was intended to "encourage more equitable behavior in the marketplace." *Manning v. Zuckerman,* 388 Mass. 8, 12, 444 N.E.2d 1262 (1983). In *Manning,* the Supreme Judicial Court held that § 11 of c. 93A did not apply to employee-employer disputes; although the defendant is a self-insurer and although plaintiff could attempt to use § 9 instead of § 11 of c. 93A, *Manning* bars the action because this is not a marketplace transaction. *Cf. International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 99 S.Ct.

572

790, 58 L.Ed.2d 808 (1979) (compulsory payments by employer into union pension plan does not constitute purchase of a "security" under the federal Securities Acts by an employee).

■ Finally, the third count of the complaint alleged intentional infliction of emotional distress. The district court applied *Foley v. Polaroid Corp.,* 381 Mass. 545, 413 N.E.2d 711 (1980), to bar this action. In *Foley,* the court held that actions for intentional infliction of emotional distress caused by an employer's actions during the employment relationship were barred by the exclusivity provision of the workmen's compensation statute. M.G.L. c. 152, § 24. In this case, although the last letter may have been sent after the employment relationship ended, it was part of a single course of conduct begun by the first letter while the plaintiff was still a Quincy Market employee. As the employer's conduct substantially took place while the plaintiff was an employee, and it explicitly concerned his employment, the plaintiff suffered "a personal injury arising out of and in the course of his employment ...." M.G.L. c. 152, § 26.

Affirmed.