William R. DUNFEY, Plaintiff,

v.

**ROGER WILLIAMS UNIVERSITY,**
Defendant.

Civ. A. No. 91–12723–GN.

United States District Court,
D. Massachusetts.

June 10, 1993.

is waiving the claims contained in Count II and Count V.

Edward N. Perry, Perkins, Smith & Cohen, Boston, MA, for William R. Dunfey.

Patricia K. Rocha, Christopher C. Whitney, Adler, Pollock & Sheehan, Providence, RI, for Roger Williams University.

## MEMORANDUM AND ORDER

GORTON, District Judge.

William R. Dunfey ("Dunfey") commenced this action for damages against Roger Williams University ("Roger Williams") alleging breach of his employment contract, breach of an implied covenant of good faith and fair dealing and wrongful termination.[1] Pending before the Court are the following motions: 1) Roger Williams' Motion for Summary Judgment on Dunfey's breach of contract claim and 2) Roger Williams' Motion to Dismiss Dunfey's claims for breach of implied covenant of good faith and fair dealing and wrongful termination.

1. Dunfey is a Massachusetts resident and Roger Williams is a Rhode Island corporation located

## I.  BACKGROUND

Dunfey was appointed Associate Director of Admissions at Roger Williams in 1981 and in June, 1985, he became the Director of Admissions. On March 1, 1986, Dunfey was appointed a member of the President's Advisory Council at Roger Williams, a position he held through August 31, 1991.

Natale A. Sicuro ("Sicuro") became President of Roger Williams in August, 1989, and after "philosophical differences" developed between Dunfey and Sicuro, Dunfey was informed, in August 1990, that Roger Williams would seek to replace him as Director of Admissions. Dunfey was told that Roger Williams would, however, continue to employ him through the summer of 1991 as Assistant to the Vice President for Academic Affairs. Dunfey was also to continue to serve as Director of Admissions until a replacement was found. That arrangement was set forth in a letter to Dunfey dated August 21, 1990 from Malcolm Forbes, Vice President for Academic Affairs. After leaving Roger Williams, Dunfey obtained employment at Adelphi University and thereafter at Bradford College.

In 1978, Roger Williams created a Personnel Policy Manual. In June 1989, a revised Personnel Policy Manual (the "Manual") was distributed to several Roger Williams employees including Dunfey. A memorandum from Dean of Administrative Services, Stanley Jakobiak ("Jakobiak"), accompanying the distribution states in part: "Please keep in mind that the Personnel Manual is college policy regarding *non-union* personnel." (emphasis in original). Dunfey was a nonunion employee.

Section 18 of the Manual, entitled *"Severance Pay for Administrative Employees"* provides:

> Upon receipt of notification that services of an administrator who serves or who has served as a member of the President's Advisory Council is involuntarily terminated, a severance pay will be offered by the College. The rate of severance pay will be

in Bristol, Rhode Island.

at the rate of one month's salary for every six months of continuous employment. No administrator will qualify for severance pay unless he has a minimum of ten years of service as an administrative employee of the College.

In the spring of 1991, Roger Williams presented Dunfey with a "Certificate of Recognition" for "Ten Years of Dedicated Service." Part V of the Manual is entitled "TERMINATION POLICIES" and provides, in part: "A written warning will be given before termination for cause can be effected except in cases of flagrant violation of College policy."

The Manual further states in Section 4, entitled *"Implementation"*:

> Additional policies and practices or changes may evolve and this Personnel Policy Manual may be amended, modified, or superseded at any time. Written notice of such changes will be distributed as soon as possible. All staff are encouraged to study this manual, and to recommend amendments and/or additions at future staff meetings.

Dunfey states that in June and July of 1990, before he was notified that Roger Williams would seek to replace him, he declined to accept a position at New England College partly in reliance upon the Manual's severance pay provision.[2]

## II. CHOICE OF LAW

■ The parties disagree on whether Massachusetts or Rhode Island substantive law governs this diversity action. A federal Court sitting in diversity must apply the choice of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Thus, this Court must look to Massachusetts choice of law rules.

### A. Contract Claims

■ Dunfey's claims for breach of contract and breach of implied covenant of good faith and fair dealing sound in contract. *See Bertrand v. Quincy Market Cold Storage &*

*Warehouse,* 728 F.2d 568, 571 (1st Cir.1984). With respect to contractual choice of law issues, Massachusetts employs a "functional" approach "that responds to the interests of the parties, the States involved, and the interstate system as a whole." *Bushkin Associates, Inc. v. Raytheon Co.,* 393 Mass. 622, 473 N.E.2d 662, 668 (1985). Under that approach, the Court applies "the substantive law of the state which has the more significant relationship to the transaction in litigation." *Hendricks & Associates, Inc. v. Daewoo Corp.,* 923 F.2d 209, 212 n. 3 (1st Cir. 1991). Factors to be considered and weighed are: 1) the place of contracting; 2) the place of negotiation of the contract; 3) the place of performance; 4) the location of the subject matter of the contract; and 5) the domicile, residence, nationality and place of incorporation of the parties; 6) the needs of the interstate and international system; 7) the relevant policies of the forum; 8) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue; 9) the protection of justified expectations; 10) the basic policies underlying the particular field of law; 11) certainty, predictability and uniformity of result; and 12) ease in the determination and application of the law to be applied. *Continental Bank, Nat. Ass'n v. Village of Ludlow,* 777 F.Supp. 92, 99 (D.Mass.1991); *Bushkin Associates, Inc.,* 473 N.E.2d at 669; Restatement (Second) of Conflict of Laws (1971), §§ 6(2) and 188(2).

■ Applying those principles to the case at bar, the Court concludes that Rhode Island substantive law governs Dunfey's contract claims. The Personnel Manual on which Dunfey bases his contract claims was drafted in Rhode Island. Under Dunfey's theory, the Manual dictates the relationship between Roger Williams, which is located in Rhode Island, and Roger Williams' non-union employees, who work in Rhode Island. Dunfey, himself, worked in Rhode Island.

Dunfey argues that Massachusetts law applies because he, as a Massachusetts resi-

---

**2.** Dunfey has moved to strike Jakobiak's affidavit in support of the motion for summary judgment, because portions of the affidavit do not satisfy the requirements of Fed.R.Civ.P. 56(e). That motion is denied as moot because, in deciding the motion for summary judgment, the Court has not considered the portions of the affidavit to which Dunfey objects.

dent, had a justified expectation that the alleged contract would be enforced in accordance with Massachusetts law. Even assuming that Dunfey had such an expectation, it is only one factor to be considered. Because of the greater number and significance of Rhode Island contacts, Rhode Island law governs Dunfey's contract claims. *Hendricks & Associates, Inc.*, 923 F.2d at 212–213 n. 3.

### B. Wrongful Discharge Claim

■ Dunfey's wrongful discharge claim sounds in tort. *See Norris v. Lumbermen's Mut. Cas. Co.*, 881 F.2d 1144, 1152 (1st Cir. 1989). Under Massachusetts choice of law rules, tort claims are governed by the law of the state where the alleged injury occurred, unless another state has a more significant relationship to the cause of action. *Alves v. Siegel's Broadway Auto Parts, Inc.*, 710 F.Supp. 864, 869–871 (D.Mass.1989); *Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 450 N.E.2d 581, 585 (1983). The place where the injury occurred "is the place where the last event necessary to make an actor liable for an alleged tort takes place." *Cohen*, 450 N.E.2d at 585 (quoting *Orr v. Sasseman*, 239 F.2d 182, 186 (5th Cir.1956)). The alleged wrongful discharge in this case occurred in Rhode Island. Thus, Rhode Island substantive law governs the claim unless Massachusetts has a more significant relationship to the cause of action. A state's relationship to a claim is determined by analyzing the last seven factors set forth in the *Continental Bank* case cited in the preceding section. *See Alves*, 710 F.Supp. at 871; Restatement (Second) of Conflict of Laws (1971), § 6(2).

Under that standard, the Court concludes that Rhode Island law also applies to Dunfey's wrongful discharge claim. Dunfey has not demonstrated that Massachusetts has a more significant relationship to the action than Rhode Island. His only argument in support of the application of Massachusetts law is that, because the economic and social impact of this litigation will fall on Massachusetts residents, Massachusetts law must be applied. The impact of this litigation will, however, be felt in Rhode Island as well. Dunfey's assertion that the economic impact

of his discharge affects him more than Roger Williams is insufficient justification for applying Massachusetts law. Because Massachusetts does not have a more significant relationship to Dunfey's claim than does Rhode Island, the Court must apply the law of the state in which the alleged tort occurred, Rhode Island.

### III. MOTION FOR SUMMARY JUDGMENT

Summary Judgment shall be entered where the pleadings, discovery on file and affidavits, if any, show "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When one party has moved for summary judgment, it behooves the opposing party to delineate:

> a genuine disagreement as to some material fact.... In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law.

*United States v. One Parcel of Real Property, Etc. (Great Harbor Neck, New Shoreham, R.I.)*, 960 F.2d 200, 204 (1st Cir.1992) (citations and internal quotation marks omitted). On a motion for summary judgment, the Court views the evidence and all reasonable inferences to be culled therefrom in the light most favorable to the nonmoving party. *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir. 1993).

Roger Williams moves for summary judgment on Dunfey's breach of contract claim. Dunfey alleges that Roger Williams breached its contractual obligations to provide him with severance pay and to follow specified procedures prior to terminating him. The Manual, according to Dunfey, gives rise to such obligations.

■ In *Roy v. Woonsocket Inst. for Savings*, the Rhode Island Supreme Court specifically refused to address the issue of whether "handbooks and personnel policies may give rise to contract rights in certain circumstances." 525 A.2d 915, 918 (R.I.

1987). The *Roy* court, however, expressly declared that an employee cannot rely on statements in a manual if the manual can be altered or revoked at any time and for any reason, quoting with approval a Michigan Court of Appeals decision:

> [I]f an employer notifies its employees that its policies are subject to unilateral change, the employees can have no legitimate expectation that any particular policy will remain in force.

*Id.* at 918 (quoting *Dudkin v. Michigan Civil Service Commission,* 127 Mich.App. 397, 407, 339 N.W.2d 190, 195 (1983)). This Court is persuaded that if Rhode Island were to rule that employee manuals can be the source of contractual rights for employees, it would nonetheless limit such a ruling to cases in which the manual does not state that its contents may be altered or revoked at any time. As quoted in the Background Section above, Section 4 of the Manual in the case at bar specifically states that it may be so amended.

Dunfey argues that the Manual does not state that Roger Williams could "unilaterally" change the manual. He further claims that Section 4 strongly implies that the Manual will not be amended without consultation. The handbook at issue in *Roy* did not, however, contain the word "unilateral". Nor does the fact that the Manual here requests recommendations from the staff detract from the clarity of the phrase "may be amended, modified, or superseded at any time." Indeed, the Manual was revised in October, 1988 and there is no evidence that Dunfey, who had been at Roger Williams since 1981, played any role whatsoever in that revision. In sum, the Court concludes that the Manual does not create any contractual rights between Roger Williams and Dunfey, and, therefore, Dunfey's breach of contract claim fails as a matter of law.

■ Dunfey argues, in the alternative, that under an estoppel theory, Roger Williams is obligated to comply with the severance pay and termination procedures of the Manual. To establish an estoppel claim under Rhode Island law, one must demonstrate: 1) an affirmative representation or equivalent conduct by the party against whom the es-

toppel is to be applied, 2) that the representation was made for the purpose of inducing the other party to act or fail to act in reliance on that representation, and 3) that the representation or conduct did induce the other party to act or fail to act to his or her detriment. *See Lutz Engineering Co. v. Industrial Louvers, Inc.,* 585 A.2d 631, 637 (R.I.1991).

■ Dunfey contends that the necessary representations were made by virtue of: 1) the severance pay and termination provisions in the Manual, 2) the June, 1989 memorandum from Jakobiak stating that the Manual was college policy for non-union personnel, and 3) the long-term conduct in accordance with the Manual. Dunfey asserts that he relied on those representations in turning down a job offer from New England College in the summer of 1990.

The Rhode Island Supreme Court has held that "[t]he key element of an estoppel is intentionally induced prejudicial reliance. . . ." *East Greenwich Yacht Club v. Coastal Resources Management Council,* 118 R.I. 559, 376 A.2d 682, 686 (1977). It cannot reasonably be concluded that the representations identified by Dunfey amounted to an intentional effort by Roger Williams to induce prejudicial reliance by Dunfey, given the fact that the Manual specifically states that it "may be amended, modified, or superseded at any time." Dunfey's estoppel claim must therefore also be rejected.

## IV. MOTION TO DISMISS

Roger Williams has moved to dismiss Counts II and III of Dunfey's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. In analyzing a Rule 12(b)(6) motion to dismiss, the Court accepts "the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. v. Ponce Federal Bank,* 958 F.2d 15, 17 (1st Cir.1992). A count may be dismissed for failing to state a claim "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Id.* (quoting *Correa–Martinez v.*

*Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir. 1990)).[3]

### A. Breach of Implied Covenant of Good Faith and Fair Dealing

Roger Williams argues that Dunfey's claim of breach of an implied covenant of good faith and fair dealing must be dismissed because Rhode Island does not recognize such a claim in the context of an at-will employment. Dunfey counters that Rhode Island will recognize such a covenant and that Roger Williams breached the covenant by terminating him to avoid paying him accrued financial benefits, i.e. severance pay.

■ It is "firmly established . . . in Rhode Island that a contract to render personal services to another for an indefinite term is terminable at the will of either party at any time for any reason or for no reason at all." *Roy v. Woonsocket Institution for Savings*, 525 A.2d at 917. Thus, an implied covenant of good faith and fair dealing is generally not recognized in the at-will employment context under Rhode Island law. *Lopez v. Bulova Watch Co., Inc.*, 582 F.Supp. 755, 767 n. 19 (D.R.I.1984); *Brainard v. Imperial Mfg. Co.*, 571 F.Supp. 37, 40 (D.R.I. 1983) (citing *Rotondo v. Seaboard Foundry, Inc.*, 440 A.2d 751 (R.I.1981)). In *Cummins v. EG & G Sealol, Inc.*, 690 F.Supp. 134 (D.R.I.1988), the United States District Court for the District of Rhode Island, however, carved out a narrow exception to the

rule that at-will employees may be fired for any reason whatsoever. In *Cummins*, the Court held that "under Rhode Island law an employee-at-will possesses a cause of action in tort against an employer who discharges the employee for reporting employer conduct that violates an express statutory standard." *Id.* at 139.[4]

■ In his Complaint, Dunfey does not allege that his employment with Roger Williams was for a definite term prior to August, 1991, when he was informed that Roger Williams would replace him. Thus, Dunfey was an at-will employee. *See Payne v. K–D Manufacturing Co.*, 520 A.2d 569, 573 (R.I.1987).[5] As an employee at-will, Dunfey could be terminated for any reason as long as the reason for firing did not violate an express statutory standard. In his Complaint, Dunfey does not point to any violation of an express statutory standard by Roger Williams, nor can one be implied.

Dunfey contends that *Cummins* should be extended to encompass his situation. This Court, however, is bound to follow the pronouncements of the Rhode Island Supreme Court on Rhode Island law. In the face of the undeniably strong language of the *Roy* Court, *Cummins* should not be read expansively. Thus, Dunfey's claim that Roger Williams violated an implied covenant of good faith and fair dealing will be dismissed.

3. Dunfey urges the Court to treat the Motion to Dismiss as one for summary judgment because the affidavit of Robert F. McKenna, submitted by Roger Williams in support of the motion, contains statements pertaining to material facts that Dunfey claims are disputed. The Court declines to grant Dunfey's request, because neither that affidavit nor any other matter outside the pleadings has been considered in connection with the Motion to Dismiss.

4. In recognizing such an exception to the traditional Rhode Island rule that an at-will employee can be fired for any reason, the *Cummins* Court interpreted the Rhode Island Supreme Court's decision in *Volino v. General Dynamics*, 539 A.2d 531 (R.I.1988), as "tacitly recogniz[ing] that employees-at-will possess a cause of action in tort in cases where they are discharged for exposing employer conduct that is contrary to statutorily enacted public policy." *Cummins*, 690 F.Supp. at 136. The Rhode Island Supreme Court, how-

ever, has not, tacitly or otherwise, recognized such a cause of action in a situation similar to the one before this Court.

5. Dunfey's argument that a covenant of good faith and fair dealing should be read into his employment from August 1990 to August 1991, which he describes as being governed by an express contract having a definite term, is unpersuasive. Dunfey was paid through September 6, 1991 (Complaint—¶ 12). Therefore, if there was, in fact, an express contract for employment from August, 1990 to August 1991, it was not terminated, it was complied with. Because there was no termination, there could be no claim that there was a termination in violation of a covenant of good faith and fair dealing. Moreover, such a covenant in the employment context has generally been implied only in contracts of employment at-will. *Bertrand*, 728 F.2d at 571 (applying Massachusetts law).

### B. Wrongful Termination

Count III of Dunfey's Complaint alleging wrongful termination fares no better. It is essentially the same claim as the claim of breach of an implied covenant of good faith and fair dealing. The only meaningful difference is that the wrongful termination claim sounds in tort. Because of the policy of permitting either party to an at-will employment contract to terminate the contract for any reason, "Rhode Island law ... does not generally recognize wrongful discharge claims by employees at will." *Henderson v. Tucker, Anthony and RL Day,* 721 F.Supp. 24, 27 (D.R.I.1989). *Cummins* remains the sole exception to that long-standing rule. 690 F.Supp. 134. Dunfey's wrongful termination claim does not come within that exception. Accordingly, it will be dismissed.

### ORDER

For the foregoing reasons, it is hereby ordered:

1. Motion of defendant, Roger Williams University, for Summary Judgment on Count I of the Complaint is **ALLOWED.**

2. Motion of defendant, Roger Williams University, to Dismiss Counts II and III of the Complaint is **ALLOWED.**