Saris, J.
The plaintiff, Thelma Hyppolite, by her mother, has brought two actions against the City of Boston, one in her own right, and one in her capacity as assignee of Raphael Chan, M.D. Collectively, plaintiff asserts claims for breach of contract, bad faith refusal to settle violation of c. 93A and c. 176D, and legal malpractice. Both actions arise out of plaintiffs previous medical malpractice action in which she obtained a judgment against Dr. Chan, who then assigned to her his claims against the city. Defendant now moves for summary judgment on all claims pursuant to Mass.R.Civ.P. 56. For the following reasons, *32 summary judgment is allowed in part and denied in part.
BACKGROUND
Based on the exhibits and affidavits submitted in connection with defendant’s motion for summary judgment, the undisputed facts are as follows. The plaintiff, Thelma Hyppolite was bom at Boston City Hospital on November 7, 1976. Dr. Raphael Chan was one of three physicians who assisted in the delivery. Thelma sustained serious physical injuries allegedly due to the negligence of the physicians. She, by her mother Gladys Hyppolite, sued Dr. Chan and one other physician for medical malpractice.
At the time of the alleged malpractice in 1976, Dr. Chan was employed at Boston City Hospital as a resident physician. Pursuant to the collective bargaining agreement between the city and the House Officers’ Association (the “House Agreement”), the City of Boston, acting as self-insurer, agreed to provide its resident physicians with malpractice insurance in the amount of $200,000.00/$600,000.00. Some time after the delivery, Dr. Chan moved from the United States to Singapore where he is presently practicing medicine.
On February 13, 1984, Dr. Chan wrote a letter from Singapore to the Administrator at Boston City Hospital informing him that he had received a summons and a malpractice complaint brought by Thelma Hyppolite in Suffolk Superior Court. He asked for advice regarding the matter. Attorney Claire S. Berman of the City of Boston Law Department responded to Dr. Chan by letter informing him that she would represent him in the case. She requested that he review enclosed medical records and send her a “detailed description” of his involvement in the case. Attorney Berman was succeeded by Attorney Joseph L. Tehan, Jr. in April 1985, who forwarded interrogatories and requests for production from the plaintiff to Dr. Chan in Singapore. Attorney Tehan asked Dr. Chan to formulate draft responses to the interrogatories and to provide certain requested documents. Approximately two and a half months later, Dr. Chan responded to the discovery request. Attorney Tehan considered Dr. Chan’s answers insufficient and requested further information.
As the case proceeded, Attorney Tehan complained to Dr. Chan several times by letter of Dr. Chan’s inadequate response to discovery requests, and the doctor’s “general lack of cooperation.” On January 27, 1986 Attorney Tehan concluded his letter to Dr. Chan with the following warning:
Pursuant to the agreement in effect in November, 1976 by and between City of Boston and House Officers’ Association, your cooperation and assistance in defense preparation and/or trial is a condition precedent to representation and indemnification by the City of Boston. Accordingly, I must advise you that your lack of cooperation concerning this matter may subject you to a loss of representation and indemnification benefits, thereby subjecting you to personal liability in this case. If I do not hear tom you prior to March 1, 1986, I shall be forced to notify you of a formal termination of the above-referenced benefits at that time.
On August 18, 1986, Attorney Tehan informed Dr. Chan by letter that due to Dr. Chan’s lack of cooperation, Attorney Tehan withdrew as counsel and the City of Boston disclaimed any responsibility of indemnification.
Plaintiffs attorney made at least one offer to settle the suit, but the city rejected the offer. It is unclear whether the city attorneys ever notified Dr. Chan of the offer.
A default judgment was entered against Dr. Chan on July 27, 1987, in the amount of $2,500,000.00. Plaintiff brought an action to enforce the judgment in Singapore. As part of the terms of a settlement, Dr. Chan assigned all of his rights against Attorneys Berman and Tehan and the City of Boston to Thelma Hyppolite. Thelma Hyppolite then filed the two present actions in Suffolk Superior Court. The first action, Hyppolite v. Boston, C.A. No. 89-5447, alleges that Boston is obligated to pay the full judgment under the agreement (Count I); that Boston is obligated to pay $200,000, the policy limit, under the Agreement (Count II); that Boston is liable for bad faith refusal to settle (Count III); and violation of c. 93A and c. 176D (Count IV). Plaintiff brings the second action, Hyppolite v. Tehan, Jr., et al., C.A. No. 89-5448, in her capacity as assignee alleging legal malpractice (Counts I and II); breach of contract (Count III); bad faith refusal to settle (Count IV); and violation of c. 93A and c. 176D (Count V).
In a Memorandum of Decision dated March 26, 1991, Judge King allowed plaintiff to reach and apply the $200,000.00 in insurance proceeds available under the House Agreement. In another Memorandum of Decision, issued on the same date, Judge King dismissed the legal malpractice claims alleged in counts I and II against the defendants Attorneys Tehan and Berman on the ground that they were barred by the Massachusetts Tort Claims Act, G.L.c. 258, §2.
Defendant, City of Boston, now moves for summary judgment on the remaining counts. Boston claims (1) it is not liable as a matter of law under either c. 93A or c. 176D because it is not engaged in “trade or commerce” or in the “business of insurance"; (2) plaintiffs breach of contract claims are barred because Dr. Chan did not pursue the mandatory grievance and arbitration procedure provided for in the union contract; and (3) plaintiffs legal malpractice claims fail because no presentment was filed as required under the Massachusetts Tort Claims Act, G.L.c. 258.
*33 DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where the party moving for summary judgment does not have the burden of proof at trial, this burden may be met by either submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991). Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson v. Time, Inc., 404 Mass. at 17.
1. Violation of G.L.c. 93A and G.L.c. 176D
Both actions allege that the city breached its duty to settle in good faith in violation of c. 93Aandc. 176D. (Hyppolite v. Boston, Count IV; Hyppolite v. Tehan, Count V.) The city argues that as a matter of law it cannot be liable under either statute because it is neither engaged in “trade or commerce” under G.L.c. 93A, §1, nor engaged in the “business of insurance” under G.L.c. 176D, §1. The plaintiff contends that the character of the defendant is the same as that of an insurer and as such it is engaged in trade or commerce under 93A and the business of insurance under 176D.
A. Trade or Commerce Under Chapter 93A
Chapter 93A prohibits unfair or deceptive acts or practices in the conduct of any “trade or commerce." G.L.c. 93A, §2(a). “Trade or commerce,” as defined by the statute, includes “the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this Commonwealth.” G.L.c. 93A, §l(b).
To determine whether a certain organization or entity is engaged in trade or commerce for 93A purposes the court “needs to look at the particular circumstances to determine whether the acts complained of were committed within a business context." (Emphasis added.) Planned Parenthood Federation of America, Inc. v. Problem Pregnancy of Worcester, Inc., 398 Mass. 480, 492-93 (1986) (Planned Parenthood) citing Begelfer v. Negarian, 381 Mass. 177, 190 (1980). Factors to consider include (1) the nature of the transaction; (2) the character of the parties involved; (3) the activities engaged in by the parties; and (4) whether the transaction was motivated by business or personal reasons. Begelfer v. Negarian, 381 Mass, at 190-91. Barrett v. Massachusetts Insolvency Fund, 412 Mass. 774, 775-76 (1992).
“Chapter 93A contains no explicit indication that governmental entities are to be liable under its provisions.” U.S. Leasing Corp. v. Chicopee, 402 Mass. 228, 232 (1988) (“Chicopee”) (school committee, in leasing a computer from plaintiff, not engaged in trade or commerce). In Chicopee, the Supreme Judicial Court declined to rule whether municipalities may in some circumstances be amenable to 93A claims because it was clear in the circumstances of the case that the ciiy had not engaged in trade or commerce. Id. In a suit by Boston City Hospital against an insurer, the court held that the Ciiy of Boston is a person who engages in the conduct of any trade or commerce for purposes of standing to bring a claim under G.L.c. 93A, §11. Boston v. Aetna Life Ins. Co., 399 Mass. 569, 574-75 (1987) (Aetna). Plaintiff argues that Aetna is disposi-tive of the issue whether the hospital was engaged in trade or commerce for purposes of liability under G.L.c. 93A, §9.
There are, however, compelling policy reasons for excluding a municipality from 93A liability for punitive damages. Traditionally, courts have not favored the recovery of multiple or punitive damages against a municipal corporation. See generally Annot., “Damages from Municipal Corporation’ ” 1 A.L.R. 4th 448 (1985 and Supp. 1992). “In general, courts viewed punitive damages as contrary to sound public policy, because such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised.” Newport v. Fact Concerts, Inc., 453 U.S. 247, 263 (1981) (holding, after exhaustive discussion of municipal common-law immunity from punitive damages and public policy considerations, that a municipality is immune from punitive damages under §1983).
Even if the city could be held liable as a person under 93A, §9, in the circumstances of this case, the city was not engaged in trade or commerce when it provided insurance to its employees. The provision of medical malpractice insurance is not part of the hospital’s “commercial activities with regard to consumers, competitors, or other business persons.” Manning v. Zuckerman, 388 Mass. 8, 13 (1983). The services contemplated by the statute’s definition “are those offered generally by a person for sale to the public in a business transaction.” Id. The relevant transaction in this case, the provision of medical malpractice insurance, was not a marketplace transaction.
*34 The “Legislature did not intend to grant the protection of c. 93A to a former employee against his former employer in a dispute arising out of the employment relationship.” Anzalone v. Massachusetts Bay Transportation Authority, 403 Mass. 119, 121 (1988) (rejecting 93A claim that MBTA unfairly handled workers’ compensation claims). Boston supplied medical malpractice insurance to its resident physicians pursuant to a provision in a collective bargaining agreement as part of an employee benefit package. While the hospital routinely issued its own insurance policies, arguably as consideration for physician services, it did not sell or distribute insurance to parties other than its employees. In addition, although the decision to self-insure was motivated by cost concerns, the hospital did not insure its physicians in order to make a profit. See Planned Parenthood, 398 Mass. at 494-95 (free pregnancy tests and counseling provided by charitable corporation not within reaches of 93A).
The Legislature originally enacted c. 93A to improve the commercial relationship between consumers and businesses. By proscribing unfair or deceptive acts or practices, the “Legislature strove to encourage more equitable behavior in the marketplace.” Manning v. Zuckerman, 388 Mass. at 11. Transactions which are essentially “private in nature” are not covered by the statute. Lantner v. Carson, 374 Mass. 606, 608 (1978). A city hospital which provides malpractice insurance to its resident physicians does not engage in the business of insurance by virtue of its decision to self-insure. See Bertrand v. Quincy Market Cold Storage & Warehouse Co., 728 F.2d 568, 571 (1st Cir. 1984) (provision of worker’s compensation insurance by employer to employee not a marketplace transaction for 93A purposes). For these reasons, the city was not engaged in trade or commerce in the circumstances of this case and cannot be liable under 93A as a matter of law.
B. Business of Insurance under G.L.c. 176D
General laws c. 176D, §2 prohibits unfair claim settlement practices in the business of insurance. A violation of G.L.c. 176D, §3(9), is deemed, by virtue of G.L.c. 93A, §9(1) to give rise to a c. 93A claim. General Laws c. 176D, §l(a) states that it applies to any self-insurer “which is engaged in the business of insurance.” As stated above, the city does not engage in the business of insurance by virtue of its choice to self-insure its own resident physicians. See Anzalone v. Massachusetts Bay Transportation Authority, 403 Mass. at 122 (holding that a self insuring employer under the worker’s compensation law “does not become an insurance company liable under G.L.c. 176D”); Bertrand v. Quincy Market Cold Storage & Warehouse, 728 F.2d at 571 (same).
2. Breach of Contract
In Hyppolite v. Tehan, Jr. et. al., plaintiff alleges as assignee, that Boston’s failure to pay the policy proceeds, due pursuant to the House Agreement, is a breach of contract. (Count III). Defendant claims that Dr. Chan’s failure to exhaust his contractual remedies under Article IV of the House Officer’s Agreement bars his claim that the city breached the Agreement by allegedly failing to defend and/or settle the malpractice claim against him.
All defenses available against a party are equally available against the party’s assignee. Quincy Trust Co. v. Pembroke, 346 Mass. 730, 732 (1964). Defendant may therefore assert any defenses it has against Dr. Chan in its defense of the action brought by plaintiff, Dr. Chan’s assignee.
Failure to pursue contractual grievance procedures may bar suits against an employer. Johnston v. School Committee of Watertown, 404 Mass. 23, 25 (1989). However, “the right to arbitration may be lost, as any contractual right which exists in favor of a party may be lost through a failure properly and timely to assert the right.” Home Gas Corp. of Massachusetts, Inc. v. Walter's of Madley, Inc., 403 Mass. 772, 775 (1989) (Home Gas). “A party must ‘proceed with dispatch in seeking arbitration’ if it does not wish to waive that right.” Id., quoting Jones Motor Co. v. Chauffeurs Local No. 633, 671 F.2d 38, 42 (1st Cir. 1982), cert. denied, 459 U.S. 943 (1982). The essential question is whether, under the totality of the circumstances, the defaulting party acted inconsistently with the arbitration right. Martin v. Norwood, 395 Mass. 159, 162 (1985).
In deciding the waiver issue, courts consider several factors:
(F)ederal courts typically have looked to whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right . . . whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff... whether there has been a long delay in seeking a stay or whether the enforcement of arbitration was brought up when trial was near at hand . . . Other relevant factors are whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of proceedings . . . whether important intervening steps (e.g. taking advantage of judicial discovery procedures, not available in arbitration . . .) had taken place . . . and whether the other party was affected, misled, or prejudiced by the delay.... (Citations omitted.)
Home Gas, 403 Mass. at 775-76, citing Reid Burton Constr., Inc. v. Carpenters Dist. Council, 614 F.2d 698, 702 (10th Cir. 1980), cert. denied, 449 U.S. 824 (1980).
In the present case, defendant has participated substantially in litigation and has only raised the defense of arbitration on the eve of trial. In response to the initial filing of both suits, the city filed a motion to dismiss and an answer, neither of which requested *35 a stay of proceeding nor raised the defense of arbitration. In opposition to plaintiffs motion for summary judgment, filed on September 14,1990, Boston did not assert this defense. Defendant filed its own motion for summary judgment on August 27, 1991 on other grounds and still did not assert the arbitration defense. Further action was taken in the case on February 2, 1992, when the cases were consolidated for trial. Only as the prospect of trial loomed did defendants raise the issue of the enforcement of arbitration. In the meantime, defendant has availed itself of approximately two years of discovery.
Defendant’s substantial delay in invoking the arbitration clause and its engagement in the litigation and discovery justifies a holding in this case that defendant has waived its rights to arbitration. The court will not permit parties to “waste scarce judicial time and effort” and hamper judges’ authority “to control the course of proceedings before them and to correct any abuse of those proceedings by, for example, denying a belated motion for arbitration.” Home Gas, 403 Mass, at 778 (defendant waived right to arbitration by waiting two and one-half years after filing of the complaint and taking advantage of discovery and a hearing before a master, before demanding arbitration); Jones Motor Co. v. Chauffeurs Local No. 633, 671 F.2d at 44 (defendant waived arbitration where it had engaged in considerable discovery; prepared the case and filed its own motion for summary judgment; and waited until summary judgment motion was decided before it demanded arbitration).
3.Legal Malpractice
Defendant argues that it is not liable for the alleged legal malpractice as a matter of law because plaintiff has failed to comply with the presentment requirements of the Massachusetts Tort Claims Act (the Act), G.L.c. 258, §4. Under that provision, it is prerequisite to an action against any public employer that notice be given to its executive officer 'within two years of the date on which the claim arose. G.L.c. 258, §4. Plaintiff concedes that no presentment was made in this case but she argues that no presentment was necessary because her claim is actually one for breach of contract and therefore is not subject to the Act.
“The traditional view of an action for damages resulting from the negligence of an attorney is that the gist of the action, regardless of its form, is the attorney’s breach of contract ...” Hendrickson v. Sears, 365 Mass. 83, 86 (1974).
Here, the action is not one for personal injury, but for negligence in representing Dr. Chan in the malpractice action against him.[1] Contrast Schenker v. Binns, 18 Mass.App.Ct. 404, 406 (1984) (the Act covers a medical malpractice action for personal injuries based on negligence even where the count purports to state a contract claim because there is “essentially little difference between the elements of proof in a tort action for personal injury and a contract action for the same”).
Defendant can cite to no Massachusetts case precluding the assignment of legal malpractice claims. There may be strong policy reasons against permitting such an assignment in some circumstances where there is a highly confidential and fiduciary attorney-client relationship. See generally Annot., “Assignability of claims for legal malpractice,” 40 A.L.R. 4th 684 (1985 and Supp. 1991). Here, those policy reasons do not apply because the legal services were provided as part of an employment agreement with the city and because Dr. Chan had never personally selected his attorney or even communicated in person with them. Accordingly, in this case the assignment is valid. See e.g., Thurston v. Continental Cas. Co., 567 A.2d 922, 923 (Me. 1989); Hedlund Mfg. Co., Inc. v. Weiser, Stapler and Spivak, 517 Pa. 522, 539 A.2d 357, 359 (1988).
4. Remaining Counts in Hyppoliie v. Boston
Count I alleges that the city is obligated to pay all of the judgment because it breached its agreement with Dr. Chan. Count III alleges that the city engaged in a bad faith refusal to settle. However, because there is no contractual relationship between the city and the plaintiff, she cannot maintain a direct cause of action against the city for the unpaid balance of the judgment beyond the policy limit. Chicoine v. State Farm Mutual Ins. Co., 351 Mass. 664, 666 (1967). To the extent Count III sounds in tort, it must be dismissed because plaintiffs fafied to make presentment pursuant to G.L.c. 258, §4.
5. Remaining Counts in Hyppolite v. Tehan
In Count IV, plaintiff, as assignee, alleges that she was injured by the city’s bad faith refusal to settle. The city argues that this claim sounds in tort and is barred because plaintiffs failed to make presentment pursuant to G.L.c. 258, §4. However, the insurer’s duty to act in good faith in settling claims “arises out of the contract.” Abrams v. Factory Mutual Liability Insurance Co., 298 Mass. 141, 144 (1937) (“Abrams”) (duty of insurer to defend implies an obligation that the insurer will exercise ordinary care and good faith). See generally Murach v. Massachusetts Bonding & Insurance Co., 339 Mass. 184, 186-87 (1959) (insurer has reciprocal obligation under policy to negotiate for settlement in good faith). An assignment of this contractual claim is valid. Dimarzo v. American Mutual Ins. Co., 389 Mass. 85, 101-02 (1983) (assignee ofwrongful refusal to settle claim can seek amount in excess of policy coverage). To the extent, however, that the count seeks to assert a tort claim, Abrams, 298 Mass. at 144, it is barred by the failure to present.
6. Claim of Intervening and Superseding Act
Defendant claims that any harm to Dr. Chan was caused by his own failure to assume his own defense in the underlying medical malpractice action. As the *36 alleged negligence arose prior to 1977, G.L.c. 258 does not apply. The city argues that any negligence of Dr. Chan was an omission which constituted nonfeasance rather than malfeasance. See Narine v. Powers, 400 Mass. 343, 348 (1987). Plaintiff points to an admission by Dr. Chan that he had been involved in the initial care of her earlier labor stages. The current record is inadequate for determining whether Dr. Chan would have been immune from suit for his “nonfeasance” under the common law. If this defense were so clearly meritorious, the city would surely have raised it in its own defense with or without Dr. Chan’s cooperation. There is also a genuine dispute of material fact as to whether Dr. Chan acted reasonably to mitigate his damages in light of the fact he was living in Singapore at the time of the litigation.
ORDER
For the foregoing reasons, it is hereby ORDERED that: (1) defendant’s motion for summary judgment be ALLOWED with regard to Hyppolite v. Boston, C.A. No. 89-5447 (except Count II); (2) defendant’s motion for summary judgment be ALLOWED with regard to Count V of Hyppolite v. Tehan, Jr., et al, C.A. No. 89-5448; and (3) defendant’s motion for summary judgment be DENIED with regard to Counts I, II, III, and IV of Hyppolite v. Tehan, Jr., C.A. No. 89-5448.

 In a Memorandum of Decision dated March 26, 1991, Judge King noted that Counts I and II sound in tort and dismissed the counts as alleged against the individual city attorneys pursuant to G.L.c. 258, §2. The court pointed out that any contractual malpractice claim would be against the city, not the individual attorneys.