**Siobhan BERGIN, Plaintiff,**

v.

**DARTMOUTH PHARMACEUTICAL, INC., et al.  Defendants.**

**No.  CIV.A. 02–12332–JGD.**

United States District Court,
D. Massachusetts.

May 18, 2004.

Gregg D. Adler Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., Hartford, CT, for Siobhan Bergin, Plaintiff.

Wendy M. Bittner, Law Offices of Wendy M. Bittner, Boston, for Siobhan Bergin, Plaintiff.

Michael J. McGlone, Folan & McGlone, PC, Bedford, for Michael Greco, Dartmouth Pharmaceutical, Inc., Defendant.

Deborah L. McKenna, Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., Hartford, CT, for Siobhan Bergin, Plaintiff.

## MEMORANDUM OF DECISION AND ORDER REGARDING CHOICE OF LAW

DEIN, United States Magistrate Judge.

The plaintiff, Siobhan Bergin ("Bergin"), has brought three claims based on breach of contract (Counts I–III) against the defendant, Dartmouth Pharmaceutical, Inc. ("Dartmouth"), and one tort claim for negligent infliction of emotional distress (Count IV) against Dartmouth and its president, Michael Greco ("Greco"). In turn, Greco counterclaimed alleging defamation and abuse of process.[1] Trial is scheduled for May 24, 2004. In their recent pretrial submissions, the parties, for the first time, raised a choice of law issue. For the reasons that follow, this court finds that Massachusetts law governs the three contract claims. The court reserves ruling on the law applicable to Bergin's claim for negligent infliction of emotional distress until the facts are adequately developed.

It is well settled that "[a] federal Court sitting in diversity must apply the

---

1. The defamation claim is the subject of a pending motion for summary judgment in which neither party raised the choice of law issue. Thus, any such argument is waived and Massachusetts law controls that claim. See O'Rourke v. City of Providence, 235 F.3d 713, 725 n. 3 (1st Cir.2001) (issues not argued are waived). Additionally, the parties agree that Massachusetts law applies to Greco's abuse of process counterclaim. Consequently, those claims will not be addressed herein.

choice of law principles of the forum state," and thus, this court "must look to Massachusetts choice of law rules." *Dunfey v. Roger Williams Univ.*, 824 F.Supp. 18, 20 (D.Mass.1993).[2]

### 1. *The Contract Claims*

■ For contract claims, Massachusetts employs a " 'functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole' " as articulated by the Restatement (Second) of Conflict of Law (1971 & Supp.2004). *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 188 F.Supp.2d 115, 118 (D.Mass.2002) (quoting *Bushkin Assoc., Inc. v. Raytheon Co.*, 393 Mass. 622, 631, 473 N.E.2d 662, 668 (1985)). Under that approach, the court "applies the substantive law of the state which has the more significant relationship to the transaction in litigation" and considers a myriad of factors. *Dunfey v. Roger Williams Univ.*, 824 F.Supp. at 20 (internal citation and quotation omitted). The analytical framework involves "section 6(2) of the Restatement [which] sets out a general conflicts analysis for all legal disputes, section 188 [which] provides a generic contract analysis, and section 196 [which] creates an analytical framework for personal services contracts in particular." *Daynard v. Ness, Motley*, 188 F.Supp.2d at 118. Since Bergin's contract was for personal services, the analysis begins with § 196.

■ The Restatement (Second) of Conflict of Laws § 196 provides as follows:

The validity of a contract for the rendition of services and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which the event the local law of the other state will be applied.

Section 6, in turn, provides in relevant part that:

(2) . . . the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of the result, and

(g) ease in determination and application of the law to be applied.

Finally, § 188 provides in relevant part that:

(2) . . . the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

---

**2.** While "the usual first step in applying conflict of law principles is to ascertain whether there is a conflict among the laws of the various States involved," *Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 332 n. 7, 450 N.E.2d 581, 584 n. 7 (1983), the parties here have agreed that a conflict exists, although the scope of any such conflict has not been developed. Therefore, the court will assume that there is a conflict between the laws of the relevant states.

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

After reviewing all of these factors, this court concludes that the Commonwealth of Massachusetts has the most significant relationship to the parties and the transactions at issue, and its laws should apply.

In the instant case, the place of performance, if any performance had in fact taken place, was to be primarily Connecticut for Bergin and Massachusetts for Dartmouth. However, Massachusetts has a stronger relationship to the transaction. Thus, even though Bergin was to be based in Connecticut, she was to come to the Commonwealth to receive the training needed to perform her job. Massachusetts was always to be where Dartmouth would perform its contractual obligations, including, *inter alia,* administering the contract and sending product samples to Bergin. The lack of the parties' connection with Connecticut is further evidenced by the fact that Bergin never performed under the contract in Connecticut, and the parties had contemplated a different state for Bergin's performance before ultimately deciding on Connecticut—she was originally to be based in New Jersey. For these reasons, "it seems reasonable to conclude that the parties expected, or at least would not be surprised to learn, that Massachusetts law governs their relationship." *Daynard v. Ness, Motley,* 188 F.Supp.2d at 122. *Accord Nunez v. Hunter Fan Co.,* 920 F.Supp. 716, 720–21 (S.D.Tex.1996) (law of place of performance of contract not controlling where other factors, especially the parties' reasonable expectations, weigh heavily in favor of another state's law).

Other considerations also militate in favor of applying Massachusetts law. For example, Greco, the employee responsible for negotiating the contract, both works for Dartmouth in Massachusetts and lives here, and Dartmouth has its principal place of business here. Accordingly, Massachusetts has a strong public policy interest in ensuring companies based here honor their contractual obligations. *See Petr Blahout Corp. v. D'Agostino,* 256 A.D.2d 217, 218, 683 N.Y.S.2d 10 (1998) (law of place of performance not controlling where "New York's interest in seeing that the reasonable contractual expectations of its domiciliaries are adequately protected must be deemed paramount and, as such, fully warrants application of New York law").

Further, Bergin does not have any meaningful ties to Connecticut. Because her employment relationship with Dartmouth ended before her assignment began, she did not actually perform under the contract in Connecticut, or anywhere else. Moreover, she only moved to Connecticut shortly before the anticipated start date of her assignment, and has since left the state. A major part of her case is her contention that the only reason she moved to Connecticut was the job at issue. Thus, she is not an established Connecticut resident deserving of that state's protections. Connecticut has, at best, a minimal interest in this transaction.

Finally, the contract was presumably drafted in Massachusetts and, while negotiations took place in several different states, no negotiations took place in Connecticut. Rather, according to the parties, Greco (in Massachusetts) and Bergin (in various other states) exchanged numerous

phone calls and e-mails regarding the employment arrangement. For all these reasons, the contract claims will be decided under Massachusetts law.

### 2. The Tort Claim

■■■ Under Massachusetts choice of law rules, "tort claims are governed by the law of the state where the alleged injury occurred, unless another state has a more significant relationship to the cause of action." *Dunfey v. Roger Williams Univ.*, 824 F.Supp. at 21, and cases cited.[3] Since the record is unclear whether "the last event necessary to make [Greco] liable for an alleged tort" happened in Massachusetts, Rhode Island, or Connecticut, this court reserves judgment on which state's law controls. *Id.* (quoting *Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 333–34, 450 N.E.2d 581, 585 (1983)).

For all these reasons, Massachusetts law governs all claims and counterclaims except for Count IV of Bergin's complaint, on which the court reserves judgment.

### SUPPLEMENTAL ORDER REGARDING CHOICE OF LAW

As detailed in this court's "Memorandum of Decision and Order Regarding Choice of Law" ("Order") (Docket # 59), the parties disagree as to what state's law applies to the plaintiff, Siobhan Bergin's ("Bergin"), claim for negligent infliction of emotional distress against the defendants Dartmouth Pharmaceutical, Inc. ("Dartmouth") and its president, Michael Greco ("Greco"). In the Order, this court found that Massachusetts law applies to the three contractual claims Bergin filed

against Dartmouth, but, because the record was insufficient, reserved ruling on what state's law applies to her emotional distress claim until after the record had been more fully developed.[4] Now, having heard the parties' trial testimony, this court finds that Connecticut law governs the emotional distress claim.

Under Massachusetts choice of law rules, "tort claims are governed by the law of the state where the alleged injury occurred, unless another state has a more significant relationship to the cause of action." *Dunfey v. Roger Williams Univ.*, 824 F.Supp. 18, 21 (D.Mass.1993). Based on Bergin's testimony, it has become clear that "the last event necessary to make [Greco] liable for an alleged tort" happened in Connecticut and that no other state "has a more significant relationship to the cause of action." *Id.*

■■■ Thus, Bergin and Greco were in Connecticut when the last allegedly inappropriate conduct to occur in person took place, namely the interaction in her apartment on the day she arrived in Connecticut. Moreover, she was living there as a resident, albeit only for a few days, when the overall hiring process, which is the event on which her emotional distress claim is based, terminated in a phone call from Greco while he was in Massachusetts. Further, according to Bergin, she suffered the most serious physical symptoms of her distress while in Connecticut, which resulted in her visit to the emergency room. Therefore, Connecticut law shall apply to the emotional distress claim. *See Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 334, 339 & n. 11, 450 N.E.2d 581, 584, 588 & n. 11 (1983) (court applied Massachu-

---

3. It is permissible to have the law of different states apply to separate counts of a single complaint. *See Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 337, 450 N.E.2d 581, 586–87 (1983).

4. It is undisputed that Massachusetts law governs Greco's abuse of process counterclaim. (Order at 1 n. 1).

setts law to negligent infliction claim since decedent "was a Massachusetts resident, that she learned of [her son's] death while she was in Massachusetts, and that she suffered angina attacks and ultimately died in Massachusetts" despite the fact that the plane crash which caused her distress happened in Illinois).